JOSEPH W. COTCHETT (#36324)
FRANK M. PITRE (#100077)
STEVEN N. WILLIAMS (#175489)
BARBARA L. LYONS (#173548)
**COTCHETT, PITRE, SIMON & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
(650) 697-6000

D. GREG DURBIN (#81749)
**McCORMICK, BARSTOW, SHEPPARD,**
**WAYTE & CARRUTH LLP**
P.O. Box 28912
5 River Park Place East
Fresno, CA 93729-8912
(559) 433-1300

**G. KIP EDWARDS** (#50446)
Attorney at Law
P. O. Box 1979
Kings Beach, CA 96143-1979
(530) 546-5892

**Attorneys for Plaintiff**
**E. & J. Gallo Winery**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **E. & J. GALLO WINERY**, a California corporation, | Case No. CV F 03-5412 AWI  LJO |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **1. DAMAGES;** |
| **ENCANA CORPORATION**, a Canadian corporation, formerly known as and successor to **PANCANADIAN ENERGY CORPORATION**; and **WD ENERGY SERVICES, INC.**, a Delaware corporation, formerly known as **ENCANA ENERGY SERVICES, INC.**, formerly known as **PANCANADIAN ENERGY SERVICES, INC.**, | **2. DISGORGEMENT/ RESTITUTION;** |
| | **3. CONSTRUCTIVE TRUST; AND** |
| | **4. INJUNCTIVE RELIEF** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

LAW OFFICES
Cotchett,
Pitre, Simon &
McCarthy

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

Pages

I.    JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.    AGENCY AND CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    D.    UNNAMED PARTICIPANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    SALE OF GAS IN CALIFORNIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    UNBUNDLING OF GAS PRICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    BASIS DIFFERENTIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    AGREEMENT TO SET THE BASIS PRICE . . . . . . . . . . . . . . . . . . . . . 5

    E.    AGREEMENT TO DO SHAM WASH SALES . . . . . . . . . . . . . . . . . . . . 6

    F.    GALLO'S NATURAL GAS PURCHASES . . . . . . . . . . . . . . . . . . . . . 7

    G.    DAMAGES TO GALLO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    H.    TRANSFER OF ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    FIRST CLAIM FOR RELIEF
(15 U.S.C. § 1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    SECOND CLAIM FOR RELIEF
(Cal. B&P Code § 16720, et seq.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.    THIRD CLAIM FOR RELIEF
(Cal. B&P Code § 17200, et seq.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII.    FOURTH CLAIM FOR RELIEF
(Unjust Enrichment) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII.    FIFTH CLAIM FOR RELIEF
(Constructive Trust) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IX.    SIXTH CLAIM FOR RELIEF
(Cal. Civ. Code § 3439, et seq.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

X.    PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

XI.    DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

Plaintiff E. & J. GALLO WINERY alleges:

**I.**

**JURISDICTION AND VENUE**

1.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, 1332, and 1367 and 15 U.S.C. Sections 15, 22 and 26.

2.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391 and 15 U.S.C. Section 22.

**II.**

**THE PARTIES**

**A.      PLAINTIFF**

3.      **E. & J. Gallo Winery** ("Gallo") is a corporation organized and existing under the laws of the State of California.  Gallo makes and sells wine and related products.  It has its headquarters in Modesto, California.  Gallo purchases natural gas through its Supplier Development department, which operates as a centralized procurement function for various Gallo facilities in California.  Since prior to 1999 Gallo has purchased and paid for natural gas for its Modesto, Livingston, and Fresno wineries, for the glass plant that Gallo's wholly-owned subsidiary Gallo Glass Company  operates in Modesto, California, and for San Joaquin Valley Concentrate, whose assets Gallo acquired in 2002.  Gallo therefore pursues relief on its own behalf, as parent of and purchaser of natural gas for Gallo Glass Company, and as successor with respect to the claims of and purchaser of natural gas for San Joaquin Valley Concentrate. Accordingly, as used herein, "Gallo" encompasses E. & J. Winery and its subsidiaries and divisions.

**B.      DEFENDANTS**

4.      Defendant **EnCana Corporation** ("EnCana") is a Canadian corporation with its principal place of business in Alberta, Canada.  EnCana was formerly known as and is the successor to PanCanadian Energy Company, Inc.  At all relevant times, EnCana and its predecessor companies were in the business of, among others, producing natural gas and selling natural gas.  EnCana is doing business in California, directly and through subsidiaries.

5.      Defendant **WD Energy Services, Inc.** ("WD") is a Delaware corporation authorized to do business in California.  WD was formerly known Encana Energy Services, Inc. and before then as PanCanadian Energy Services, Inc.  WD was, at all relevant times, engaged in the business of purchasing and selling natural gas and purchasing and selling natural gas market based derivatives.  It also engaged in swaps with other companies.

6.      During the relevant period WD acted as the sales and marketing arm of EnCana in the United States for the natural gas produced by EnCana in Canada and the United States.  WD was EnCana's vehicle in the United States for trading, hedging, and speculating in natural gas, natural gas transportation contracts, and natural gas market based derivatives.  EnCana directed and controlled the business of WD and benefitted financially from WD activities.  The officers of WD reported directly to officers of EnCana.  EnCana actively monitored and directed the activities of WD, including its natural gas, natural gas transportation, and derivative trading activities.  The business portfolio of PanCanadian Energy Services, a Canadian division of EnCana, was combined with the business portfolio of WD and treated as one portfolio for purposes of risk management and all attendant hedging, trading and speculation activities.  EnCana established the risk limits for the entire portfolio.  WD and EnCana shared the same computer network.  EnCana and WD shared numerous alleged trade secrets.  EnCana captured the benefits of the artificial manipulation of the price of delivered natural gas and natural gas market based derivatives described below.  A sufficient unity of interest and ownership existed and exists between WD and EnCana that they were not and are not separate legal entities.  Accordingly, WD was and is the alter ego of EnCana, at all relevant times, for all purposes in this action.

C.      **AGENCY AND CONSPIRACY**

7.      At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.  Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

1  complaint.  Defendants, and each of them, have participated as members of the fraud or acted

2  with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this

3  Complaint, and have performed acts and made statements in furtherance of the violations and

4  conspiracy.

5        8.     In the illegal conduct alleged below, WD acted as the agent for EnCana, with

6  EnCana's knowledge and consent and within the scope of the authority given it by EnCana.

7  EnCana ratified all such illegal conduct.

8        9.     Continuing to late 2001, WD and EnCana engaged in a conspiracy with horizontal

9  competitors who are separate business entities and are unnamed participants, in violation of the

10  Sherman Act and the Cartwright Act, to compete unfairly, illegally, and deceptively and to

11  mislead and deceive natural gas and derivative purchasers in California, including Gallo, all to

12  the defendants' individual and mutual economic benefit.  Each of the defendants was a co-

13  conspirator of each of the other unnamed co-conspirators.  By engaging in the conduct alleged

14  herein, each of the defendants was acting within the course and scope of this conspiracy.

15  **D.**    **UNNAMED PARTICIPANTS**

16        10.    Numerous individuals and separate business entities (the "unnamed co-

17  conspirators") participated actively during the course of and in furtherance of the conspiracy.

18  Many acts were done in the course of and in furtherance of the conspiracy by statements,

19  conduct, and intent to defraud.  The individuals and entities acted pursuant to agreement and in

20  concert.  They also acted as agents for principals, in order to advance the objectives of the

21  conspiracy.  The acts were intended to promote the conspiratorial objectives.

22                                    **III.**

23                    **FACTUAL BACKGROUND**

24  **A.**    **SALE OF GAS IN CALIFORNIA**

25        11.    California imports supplies of gas from outside its border for its consumers, from

26  the producing basins in the Western and Central portions of the United States and Canada by

27  interstate natural gas pipelines.

28  / / /

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

12.     Natural gas enters California's intrastate pipeline system from the interstate pipeline system at four pipeline points.  The natural gas Gallo purchased entered the intrastate pipeline system at PG&E Citygate.  Defendants directly control a portion of the interstate pipeline capacity, and defendants and the unnamed co-conspirators control the aggregate transportation capacity.  The defendants have market power over the pricing of firm and interruptible transportation capacity, over the bundled price of natural gas delivered to PG&E Citygate, and over the derivatives supposedly based on those prices, commonly known as "swaps."

13.     Prior to 1990, the entire firm, capacity of the interstate pipeline serving California was controlled by the state-regulated natural gas local distribution utilities Southern California Gas Company ("SoCalGas") and Pacific Gas & Electric Company ("PG&E").  During that time SoCalGas and PG&E bundled their price for the gas commodity with the price for transportation of the gas into one amount that was charged to their customers, such as Gallo.

**B.**     **UNBUNDLING OF GAS PRICES**

14.     In the mid-1980s, the industry "unbundled" the price of the natural gas commodity from the price of transportation.

15.     Unbundling allowed large industrial users, such as Gallo (including its divisions and subsidiaries), the option of directly purchasing the natural gas commodity separate and independently from interstate and intrastate transportation of that gas.  The purchase of natural gas at one price and interstate transportation at another price, is known as "unbundling" the gas itself from gas transportation.

**C.**     **BASIS DIFFERENTIAL**

16.     In the 1990s, due to competition in the natural gas market at the wellhead (or producing basins) and in the transportation of natural gas to California, consumers in California benefitted from fair and reasonable natural gas prices, natural gas transportation prices, and natural gas market based derivative prices.  The price of natural gas delivered from the interstate pipeline system to the California intrastate pipeline system included the price of the natural gas commodity (typically priced on the New York Mercantile Exchange ["NYMEX"] open public market) plus the "basis differential" (often referred to in the trade by the abbreviated term

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

"basis") i.e., the difference between the NYMEX commodity price (always quoted at Henry's Hub, a location near the Texas/Louisiana border) and the price of the gas commodity at its delivery point.

17.     By the late 1990s there was excessive interstate pipeline capacity into California. In 1999, there was an average of two billion cubic feet per day (two Bcf/d) of excess interstate pipeline capacity into California.  At times, because of this over-capacity, the basis differential portion of the price of "bundled" natural gas in California was less than zero.

18.     Thus, prior to 2000, "basis" amounts for California remained competitive with "basis" amounts in other regions because pipeline capacity ("supply") remained greater than demand.  This free and open competition resulted in prices for natural gas delivered into California to California purchasers, such as Gallo, its divisions and subsidiaries, that were competitively priced with natural gas outside California.

**D.     AGREEMENT TO SET THE BASIS PRICE**

19.     Commencing in the summer of 2000 and continuing until late 2001, by their marketplace behavior and agreement as to pricing, defendants, and the unnamed co-conspirators, avoided competing with each other in the pricing and sale of "bundled" natural gas in California, in the pricing and sale of interstate gas transportation contracts into California in the secondary (or replacement) market, and in the pricing and sale of the derivatives supposedly derived from California natural gas market prices.  This agreement is evidenced by, among other things, the daily exchange of price information by and among defendants and the unnamed co-conspirators and the use of computer software programs and websites by defendants and the unnamed co-conspirators to collusively establish Defendants' and the unnamed co-conspirators' price of "basis" and thus the price of bundled natural gas pricing (and vice-versa) at artificially high levels during the relevant time.

20.     The methods by which defendants and the unnamed co-conspirators exchanged daily price information included, without limitation, the Enron Online Website, emails, Instant Messaging messages, and telephone communications.

/ / /

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

**E.      AGREEMENT TO DO SHAM WASH SALES**

21.      Defendants and the unnamed co-conspirators also agreed to do "wash" transactions under which they simultaneously bought and sold from each other the same natural gas and natural gas "basis" swaps and other commodities <u>at the same price on the same day</u>.  The "wash trades" created the false appearance of demand for and shortage of supply of natural gas and natural gas transportation into California.  The "wash trades" also served as a method of communicating collusive price information and collusively manipulating the supposedly independent third party published indexes of prices used to determine the settlement amount of natural gas contracts and natural gas derivatives, including "basis" swaps.

22.      Defendants did the acts described above for the purpose of unfairly and unlawfully setting and maintaining inflated market prices for the purchase and sale of natural gas, bundled natural gas prices, and natural gas market based derivative settlement prices.  Defendants thereby colluded to increase the basis differential throughout California, and all prices of which it was a component, including "bundled" natural gas prices and basis swap settlement prices.

23.      Defendants' and the unnamed co-conspirators' unlawful, unfair and anticompetitive practices materially raised natural gas prices, and the natural gas market based basis swap derivative settlement amounts in and for California.  The defendants' and unnamed co-conspirators' anticompetitive, unfair and unlawful conduct was so successful in increasing the basis differential that the California basis price skyrocketed an approximate 2000% increase.

**F.      GALLO'S NATURAL GAS PURCHASES**

24.      Gallo, including its subsidiaries and divisions, is a significant purchaser of natural gas.

25.       Throughout the conspiracy period, Gallo purchased natural gas for all of the Gallo entities.  Gallo directly paid for all gas purchases by the Gallo entities.  As a result, Gallo was directly damaged as a result of the excessive prices paid on all purchases of gas used by the Gallo entities during the conspiracy period.

26.      During part of the conspiracy period, Gallo purchased natural gas under an Natural Gas Purchase and Sale Agreement dated April 21, 2001, with Defendant EnCana Energy

Services, Inc. (then known as PanCanadian Energy Services, Inc.) (the "Agreement").  The Agreement defined the "Buyer" as all of the Gallo companies (including Gallo Glass Company, which was the named buyer, and E. & J. Gallo Winery).  As a result, E. & J. Gallo Winery and Gallo Glass Company were co-principals under the Agreement.  Gallo claims damages for the antitrust injury it suffered with respect to purchases of natural gas for the E. & J. Gallo Winery divisions and for the glass plant.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-736 n. 16 (1977); *see also Burkhalter Travel Agency v. MacFarms International, Inc.*, 141 F.R.D. 144, 148 (N.D. Cal. 1991).

27.    Plaintiff's claims herein do not arise under the Agreement, but under federal and state law.

**G.    DAMAGES TO GALLO**

28.    As a result of defendants' and the unnamed co-conspirators' unlawful conduct, the basis differential and price of all natural gas products and derivatives that include it as a component of their price or statement amount continued to skyrocket, remaining at supracompetitive levels through late 2001.

29.    Gallo was forced to source the natural gas vital to its business operation at prices artificially inflated by defendants' and the unnamed co-conspirators' unlawful conduct.  In particular, prices Gallo paid WD under the Agreement, as well as prices Gallo paid for natural gas purchased from other suppliers or under other contracts, were inflated because of defendants' and the unnamed co-conspirators' unlawful conduct.  Gallo was severely harmed as a result.

30.    In addition, Gallo entered into hedging contracts during the conspiracy period that provided for delivery of natural gas through mid-2002.  The prices under those hedging contracts were inflated by defendants' and the unnamed co-conspirators' unlawful conduct.  As a result, Gallo continued to pay inflated prices for natural gas through mid-2002.

31.    As a result of the collusion, combination and agreement by defendants and the unnamed co-conspirators in setting prices, the delivered price of natural gas was grossly inflated above the price that would have been set in a fair and competitive market.

32.    The precise difference between the fair and competitive price and the artificially inflated price paid by Gallo, its divisions and subsidiaries, is presently unknown to them, and will

be provided at trial by expert opinion.  Subject to that expert analysis and opinion, Gallo believes that its aggregate damages from  defendants' and the unnamed co-conspirators' unlawful conduct exceeds the jurisdictional limit of this Court.

**H.**   **TRANSFER OF ASSETS**

33.   On April 25, 2002 Encana announced that it had decided to "exit its Houston-based merchant energy operations . . .."  Almost all WD employees received notices of termination and EnCana closed WD in the Summer of 2002.  Most of WD's California natural gas business (including customer contracts, pipeline agreements, and derivative positions) were transferred to EnCana in Canada, with most of the remaining business and assets sold or transferred to unidentified parties.  EnCana publicly asserted that these steps were taken because its management viewed the business as low value added and high risk.  EnCana, in Note 5 to its Consolidated Financial Statements for 2002, stated that the wind-down of the merchant energy operations was substantially complete by December 31, 2002, and that the net assets of those operations had gone from $142 million as of December 31, 2001, to a negative $5 million as of December 31, 2002.  The wind-down and transfer of assets by WD has substantially diminished the ability of WD to pay judgments, should WD be found liable for illegal practices.

**IV.**

**FIRST CLAIM FOR RELIEF**

**(15 U.S.C. § 1)**

34.   Gallo incorporates by reference all of the above allegations.

35.   The conduct of Defendants and the unnamed co-conspirators as alleged above violates Section 1 of the Sherman Act, 15 U.S.C. § 1.

36.   As a result of defendants' unlawful conduct, Gallo was injured in its business or property in an amount to be proved at trial but exceeding the jurisdictional limit of this Court.

37.   Gallo is entitled to recover its attorneys' fees, costs and expenses of suit incurred in prosecuting this action according to proof.

**V.**

**SECOND CLAIM FOR RELIEF**

**(Cal. B&P Code §§ 16720, et seq.)**

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF
8

38.     Gallo incorporates by reference all of the above allegations.

39.     At all relevant times herein, defendants and the unnamed co-conspirators violated California Business and Professions Code sections 16720, et seq. (the "Cartwright Act"), in that their actions effectively formed one or more combinations to accomplish purposes prohibited by and contrary to the Cartwright Act.

40.     The specific actions of defendants and the unnamed co-conspirators that constituted prohibited conduct under the Cartwright Act include but are not limited to making illegal agreements among themselves to reduce competition and to raise and establish the price of delivered natural gas, interstate natural gas transportation, and settlement prices of California natural gas market based basis swap derivatives to California consumers, including Gallo. Defendants' conduct unfairly and unlawfully drove up the prices of natural gas, natural gas transportation and the settlement price of "basis" swap derivatives within California.

41.     As a direct result of the unlawful and unfair actions of defendants and the unnamed co-conspirators and each of them, Gallo, its divisions and subsidiaries, were injured in its business or property, all of which injuries caused damages to Gallo,  in amounts in excess of the jurisdictional limit of this court.

42.     As a further direct and legal result of the acts of defendants and the unnamed co-conspirators and each of them, Gallo was required to act in the protection of its interests by filing this action.  Consequently, they have incurred and will continue to incur attorneys' fees, costs, and other expenses for which they seek recovery according to proof, in accordance with the law and the rules and procedures of this Court.

43.     Pursuant to the Cartwright Act, Gallo is entitled to recover three times the damages they have sustained plus interest on such damages and reasonable attorneys' fees, costs and other expenses of suit.

## VI.

## THIRD CLAIM FOR RELIEF

### (Cal. B&P Code § 17200, et seq.)

44.     Gallo incorporates by reference all of the above allegations.

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

45.     The actions of defendants and the unnamed co-conspirators as alleged herein constituted unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code Sections 17200, et seq.

46.     The actions of the defendants and the unnamed co-conspirators described above are unlawful because they violate, without limitation, the Cartwright Act and Section 1 of the Sherman Act, and are independently unfair and fraudulent to the extent said acts harmed competition and deceived plaintiff.

47.     The actions of the defendants and the unnamed co-conspirators alleged above are unfair, because that conduct violates the policy and spirit of the antitrust laws of the State of California and of the United States in that the effects of that conduct are comparable to those designed to be prevented by the antitrust laws or otherwise significantly threaten or harm competition in a manner similar to violations of the antitrust laws.

48.     The actions of the defendants and the unnamed co-conspirators are fraudulent, because Defendants represented to Gallo that their prices were set in a fair and competitive manner when the true facts were that defendants conspired with the unnamed co-conspirators to manipulate the market and unconscionably inflate prices for delivered natural gas to the detriment of Gallo and California consumers.

49.     As a consequence of Defendants' violation of California Unfair Competition Law, Gallo, its divisions and subsidiaries have paid monies that they would not otherwise have paid, which amounts inured to the benefit of defendants, and defendants should be required to make restitution and to disgorge the ill-gotten profits unfairly, unlawfully, and fraudulently charged to Gallo.

## VII.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

50.     Gallo incorporates by reference all of the above allegations.

51.     As a result of the conduct of defendants as alleged above, they and each of them have been unjustly enriched at the expense of Gallo, its divisions and subsidiaries.  The law

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

1  thereby implies a contract by which Defendants must pay to Gallo the amount by which, in equity

2  and good conscience, the defendants have been unjustly enriched at the expense of Gallo, its

3  divisions and subsidiaries.

4  **VIII.**

5  **FIFTH CLAIM FOR RELIEF**

6  **(Constructive Trust)**

7      52.    Gallo incorporates by reference all of the above allegations.

8      53.    EnCana will be unjustly enriched at Gallo's expense if a constructive trust is not

9  imposed on the assets of WD, including those in the hands of EnCana, and the proceeds from the

10  sale of any of those assets.

11  **IX.**

12  **SIXTH CLAIM FOR RELIEF**

13  **(Cal. Civ. Code § 3439, et seq.)**

14      54.    Gallo incorporates by reference all of the above allegations.

15      55.    Gallo is informed and believes and thereupon alleges that the transfers to EnCana

16  of WD's assets and the proceeds from the sale of WD's assets were done with the actual

17  intention to hinder, delay, and defraud its creditors, including Gallo, without receiving a

18  reasonably equivalent value and, as a result, left WD insolvent.  Accordingly, the transfers

19  violate the California Uniform Fraudulent Transfer Act, California Civil Code Sections 3439, et

20  seq.

21  **X.**

22  **PRAYER**

23      Wherefore, Gallo prays for judgment against defendants, jointly and severally, as follows:

24      1.    For damages, trebled, according to proof;

25      2.    For a preliminary and permanent injunction against defendants restraining,

26  preventing and enjoining them and the unnamed co-conspirators and all those acting in concert

27  with them, from engaging in the unfair, fraudulent and unlawful actions alleged herein;

28  / / /

LAW OFFICES
COTCHETT,
PITRE, SIMON &
McCARTHY

3.      For the imposition of a constructive trust on the assets of WD, including those in the hands of EnCana, and the proceeds from the sale of WD assets;

4.      For restitution, including an order requiring defendants to disgorge all monies that were unfairly, fraudulently or unlawfully obtained from Gallo or in equity and good conscience defendants should pay to Gallo as alleged herein;

5.      For a declaration that the transfer of WD's assets to EnCana be set aside as null and void;

6.      For reasonable attorneys' fees, costs and other expenditures incurred in prosecuting this action to the extent permitted by law and to be awarded according to the law, procedures and rules of this Court applicable to awards of attorneys' fees and costs;

7.      For prejudgment and post-judgment interest at the legal rate; and

8.      For such other and further relief as the Court may deem just and proper.

Dated:  January 24, 2005.                    **COTCHETT, PITRE, SIMON & McCARTHY**

                                             **McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP**

                                             **G. KIP EDWARDS**


                                             By:___*Joseph W. Cotchett*_____
                                             **JOSEPH W. COTCHETT**
                                             Attorneys for Plaintiff
                                             **E. & J. GALLO WINERY**

LAW OFFICES
COTCHETT,
PITRE, SIMON &
McCARTHY

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

12

1

## XI.

2

## DEMAND FOR JURY TRIAL

3    Gallo hereby demands a trial by jury on all issues triable by a jury.

4

Dated:  January 24, 2005.                    **COTCHETT, PITRE, SIMON & McCARTHY**

5

6                                            **McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP**

7                                            **G. KIP EDWARDS**

8

9

10                                          By:    *Joseph W. Cotchett*
                                                   **JOSEPH W. COTCHETT**
11                                                 Attorneys for Plaintiff
                                                   **E. & J. GALLO WINERY**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   18236.6

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF