1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   E & J GALLO WINERY,                          CASE NO. CV-F-03-5412 AWI LJO

12                     Plaintiff,        _____**ORDER ON PLAINTIFF'S DISCOVERY
                                         SANCTIONS MOTION REGARDING**
13          vs.                          **DEFENDANT'S    INTERROGATORY
                                         RESPONSES**
14   ENCANA ENERGY SERVICES,             (Doc. 412.)
     INC., et al.,
15
                      Defendants.
16   _____/

17                         **INTRODUCTION**

18          In this action alleging natural gas price fixing, plaintiff E. & J. Gallo Winery ("Gallo") seeks

19   severe discovery sanctions against defendant WD Energy Services, Inc. ("WD Energy") and its counsel

20   for disobedience of this Court's order to provide further interrogatory answers.  This Court considered

21   Gallo's sanctions motion on the record and without oral argument or the May 13, 2005 hearing, pursuant

22   to this Court's Local Rule 78-230(h).  For the reasons discussed below, this Court DENIES Gallo's

23   requested discovery sanctions and GRANTS Gallo alternative relief and a monetary sanction.

24                         **BACKGROUND**

25                         **Gallo's Claims**

26          Gallo and Gallo Glass Company produce wine and wine bottles using natural gas.  Gallo is one

27   of California's largest consumers of natural gas used to operate its furnaces. Defendant Encana

28   Corporation ("Encana Corp."), a Canadian company, is North America's largest independent natural gas

                                1

producer and seller and does business in California through its subsidiaries.  Encana Energy Services, Inc. ("EES") was Encana Corp.'s indirect subsidiary and sales and marketing arm in the United States. Encana Corp. used EES to trade, hedge and speculate in natural gas, natural gas transportation contracts and natural gas market-based derivatives.  EES changed its name to WD Energy Services Inc.[1] in early 2003.

During April 2001 to June 2003, EES was Gallo's sole marketer.[2]  Gallo claims that when EES "ostensibly" worked with Gallo, EES conspired with natural gas marketers to artificially inflate natural gas prices and related commodities contracts.

On April 9, 2003, Gallo filed this action to pursue against Encana Corp. and WD Energy (collectively "defendants") price fixing claims under the Sherman Act, 15 U.S.C. § 1, and the Cartwright Act, Cal. Bus. & Prof. Code, §§ 16700, et seq., and claims for unfair business practices (Cal. Bus. & Prof. Code, §§ 17200 et seq.), and unjust enrichment, constructive trust and fraudulent transfer under California Civil Code, §§ 3439, et seq.  Gallo alleges defendants manipulated and grossly inflated California natural gas prices and derivative markets.

The parties have engaged in extensive discovery, and numerous discovery disputes have arisen, including another Gallo sanctions motion which this Court continues to address.

### WD Energy's Court-Ordered Answers To Interrogatory Nos. 1, 2 And 4

This Court's January 28, 2005 order ("January 28 order") required WD Energy to serve further answers to Gallo's Interrogatory Nos. 1, 2, 4 and 6.

**Gallo's Interrogatory No. 1** seeks the identity of documents which WD Energy produced in this action and which relate to "any COMMUNICATION with a REPORTING FIRM."

**Gallo's Interrogatory No. 2** seeks as to each document identified in response to Interrogatory No. 1, the identity of any document WD Energy "produced in this action that reflects the associated transaction or transactions."

**Gallo's Interrogatory No. 4** seeks as to each communication identified in response to

---

[1]       WD Energy was sued in this action as EnCana Energy Services, Inc.

[2]       Gallo entered into an April 26, 2001 natural gas sale and purchase agreement with Encana Corp.'s predecessor.

2

1   Interrogatory No. 3, the identity of any document WD Energy "produced in this action that reflects the

2   associated transaction or transactions."[3]

3        With its original responses, WD Energy objected that the interrogatories are unduly burdensome

4   and oppressive in that they: (a) seek information in Gallo's possession, custody or control or readily

5   available to it; and (b) require WD Energy to prepare a summary or compilation of data from documents

6   in Gallo's possession.  WD Energy responded that, pursuant to F.R.Civ.P. 33(d), the information sought

7   "can be ascertained or derived from documents already produced and/or made available to Gallo Winery

8   for its inspection and review.  The burden of deriving or ascertaining the answer is substantially the same

9   for WD as it is for Gallo Winery."

10       In response to Gallo's motion to compel, the January 28 order provides: "This Court ORDERS

11  WD Energy, no later than February 11, 2005, to serve further answers to Interrogatory Nos. 1, 2 and 4

12  to specify sufficient detail to permit Gallo to locate and identify, as readily as WD Energy, the

13  documents and their location."

14       WD Energy submitted February 11, 2005 supplemental responses to Interrogatory Nos. 1, 2 and

15  4.  Each of the supplemental responses noted "that pursuant to Rule 33(d) of the Federal Rules of Civil

16  Procedure, the response to this interrogatory can be ascertained or derived from documents already

17  produced and/or made available to Gallo Winery for its inspection and review. . . WD Energy further

18  responds that it has recently produced or made available electronic information; if WD's review of those

19  documents uncovers further responsive documents, WD will provide further information."

20       WD Energy's supplemental response to Interrogatory No. 1 refers to "recorded trader tape

21  conversations" identified by file numbers "that have been produced or made available in this litigation."

22  WD Energy's supplemental responses to Interrogatory Nos. 2 and 4 refer to "the e-mail communications,

23  to the invoices; to the pipeline statements; to the accounting pipeline reconciliation papers; to the

24  confirmations; to the broker confirms (if applicable) of the deal sheet(s); to the taped conversations; to

25  the daily internal reports; and to the underlying contracts that gave rise to the transactions that have been

26  produced or made available in this litigation . . . [and] that files maintained by individual WD employees

27

28      [3]      Gallo's Interrogatory No. 3 seeks the identity of WD Energy's "COMMUNICATIONS with any reporting firm during the relevant period," except those identified in response to Interrogatory No. 1.

1   and files relating to specific companies have been produced or made available in this litigation."

2   **Gallo's Contentions As To WD Energy's Responses to Interrogatory Nos. 1,2 and 4**

3   Gallo contends that WD Energy has known the location of the responsive documents because

4   it "had carefully organized them and produced them" to the Commodity Futures Trading Commission

5   ("CFTC") in connection with its investigation into gas price fixing.  Gallo points to a nine-page index

6   of documents with Bates-stamp and folder references to contend that "WD Energy knew exactly where

7   to locate documents responsive to Gallo's discovery requests" and has "falsely claim[ed] not to know

8   any better than Gallo where responsive records were."

9   Gallo claims that WD Energy has concealed "prior analyses of false reports, as well as pre-

10   existing compilations of false trade reports, and the associated trade data, that WD Energy submitted to

11   CFTC in the course of the that agency's investigation ***months before there was any talk of settlement.***"

12   (Emphasis in original.)  Gallo points to WD Energy's March 3 and 7, 2005 production to Gallo of eight

13   additional boxes of documents, including e-mails to price index reporting firms and associated trade

14   information "that had previously been produced to the CFTC."  According to Gallo, WD Energy has

15   misrepresented that the documents "were settlement communications" to undermine "the integrity of

16   these proceedings.  It is the epitome of fraud upon this Court."

17   Gallo further contends that WD Energy has provided "*no* information on the location of the

18   documents it was ordered to identify.  Indeed, in the context of this case, the terms 'email

19   communications, . . . invoices, . . . pipeline statements; . . . accounting pipeline reconciliation papers;

20   . . . confirmations; . . . broker confirms (if applicable) of the deal sheet(s); . . . taped conversations; . .

21   . daily internal reports and . . . underlying contracts . . ." are barely more informative than a broad 'any

22   documents we produced' statement . . ."  Gallo argues that "because of its superior knowledge of the

23   record," WD Energy "was able and obliged to provide far more comprehensive responses to

24   Interrogatory Nos. 1, 2 and 4."  According to Gallo, the data it seeks is "essential to Gallo's proof of

25   false reporting, one of the central claims in Gallo's case."

26   **Gallo's Requested Sanctions As To Interrogatory Nos. 1, 2 And 4**

27   To remedy WD Energy's failure to serve sufficient answers to Interrogatory Nos. 1, 2 and 4,

28   Gallo seeks to impose the following sanctions:

1.    An issue sanction to find as a matter of fact that:

    a.    From at least June 2000 to at least August 2001 ("relevant period"), WD Energy employees reported to certain reporting firms false information, including price and volume, for natural gas cash transactions;

    b.    Price and volume information is used by reporting firms to calculate published indexes of natural gas prices for pipeline hubs throughout the United States;

    c.    During the relevant period, WD Energy employees knowingly reported trades that did not occur, reported certain actual trades at false prices and/or volumes, and did not disclose other actual trades to attempt to benefit WD Energy's trading position;

    d.    WD Energy's false trade reports, submitted by telephone and e-mail, contained nonexistent trades and certain actual trades in which the price and/or volume was altered;

    e.    WD Energy failed to include other actual trades in these reports;

    f.    WD Energy employees knowingly delivered false trade information to reporting firms to benefit WD Energy's trading positions;

    g.    WD Energy's employees discussed false reporting with traders at two other companies;

    h.    The acts of WD Energy and its employees caused prices charged to customers of natural gas at PG & E Citygate and throughout California to be increased during 2000 and 2001; and

    I.    As a result, prices charged to consumers, including Gallo, for natural gas at PG & E Citygate were in fact increased over prices that would have been charged but for that conduct.

2.    An evidence sanction to:

    a.    Admit at trial all recordings of conversations identified to telephone lines of John Crumley, Jim McCord, Richard Anderssen, Beth Dahncke, e-mails from WD Energy to any natural gas trade indices, and all documents reflecting natural gas

5

1    trades produced by defendants or CFTC; and

2        b.    Preclude WD Energy to offer at trial any rebuttal evidence, including expert

3              testimony, concerning the fact or effect of WD Energy's false reporting.

4    3.    A terminating sanction to strike WD Energy's answer or other responsive pleading to

5          Gallo's first amended complaint based on WD Energy's "continuing course of discovery

6          obstruction and abuse."

7    4.    A financial sanction that WD Energy pay Gallo's legal expenses to pursue this motion

8          and to attempt to obtain the discovery sought by Interrogatory Nos. 1, 2 and 4.

9    **WD Energy's Contentions As To Its Responses to Interrogatory Nos. 1, 2 and 4**

10   WD Energy contends that months ago, it produced to Gallo all CFTC documents, "except for

11   the small handful of documents that are identified on WD's privilege log – documents that did not exist

12   when CFTC commenced its investigation or served any subpoena, but rather were specifically created

13   for and provided to the CFTC in order to facilitate settlement."[4]   WD Energy claims on March 3 and 7,

14   2005, it provided "Gallo with documents it had previously provided to the CFTC – not including the

15   documents over which WD asserts a settlement privilege.  The documents produced consisted largely

16   of materials that duplicated what Gallo had previously received. . . . But what is clear is that the *only*

17   CFTC documents that were not produced to Gallo are nine items created and provided to the CFTC for

18   the purpose of facilitating settlement."

19   WD Energy claims that Gallo fails "to explain how" WD Energy violated the January 28 order.

20   WD Energy asserts that its identification in writing of "all documents relating to communications with

21   a reporting firm would be tantamount to identifying a significant portion of the hundreds of thousands

22   of documents produced in this litigation."  As to Interrogatory No. 1, WD Energy notes the "only way

23   . . . to identify all communications with reporting firms would be to listen to all of the tape recorded

24   conversations.  In other words, Gallo can identify such communications as readily as WD could – by

25   listening to the tapes."  WD Energy argues that neither the Federal Rules of Civil Procedure nor the

26

27       [4]    With its April 28, 2005 order, the United States District Court for the District of Columbia granted Gallo's
         motion to compel the CFTC's production of "documents held by the CFTC for which WD Energy has asserted a settlement
         privilege."  Based on the D.C. district court's order, Gallo has access to all of the CFTC documents, except nine items to
28       which WD Energy continues to assert the settlement privilege on appeal of the D.C. district court order.

6

1   January 28 order "require WD to identify, in written form, all of the documents that it produced relating

2   to 'communications with reporting firms.'" As to Interrogatory Nos. 2 and 4, WD Energy claims that

3   it would need to listen to the trader tapes "to identify the specific invoices, pipeline statements, internal

4   reports, and underlying contracts that would reflect the underlying transactions that were reported to

5   reporting firms.  WD Energy produced all such documents to Gallo, in the precise manner in which they

6   are maintained by WD."

7   ### WD Energy's Further Court-Ordered Answer To Interrogatory No. 6

8   **Gallo's Interrogatory No. 6** seeks all facts to support WD Energy's denial of Gallo's allegation

9   that "EES and EnCana have engaged in a conspiracy with horizontal competitors who are separate

10  business entities and are unnamed participants."

11  With its original response, WD Energy objected that the interrogatory contains multiple discreet

12  subparts and responded that it is uncertain what facts might exist to disprove Gallo's allegation and that

13  WD Energy "did not enter into any illegal agreements with any actual or potential rivals.  Even if such

14  agreements existed or could be implied, they were not entered into with anticompetitive intent and did

15  not in fact have an anticompetitive effect."

16  In response to Gallo's motion to compel, the January 28 order provides: "This Court ORDERS

17  WD Energy, no later than February 11, 2005, to serve [a] complete, straightforward response[] to

18  Interrogatory No. 6 . . ."  WD Energy submitted a February 11, 2005 supplemental response to

19  Interrogatory No. 6 to state that "contrary to the allegations made in the Complaint, it did not enter into

20  any illegal agreements with any actual or potential rivals.  Although WD did at certain times enter into

21  agreements with entities that might be deemed a 'horizontal competitor,' those agreements were not

22  entered into with anticompetitive intent and did not in fact have an anticompetitive effect."

23  ### Gallo's Contentions As To WD Energy's Response To Interrogatory No. 6

24  Gallo notes that its Interrogatory No. 6 asks WD Energy to substantiate its denial of "arguably

25  ***the cental allegation of Gallo's complaint*** – that WD Energy 'engaged in a horizontal conspiracy with

26  competitors.'" (Emphasis in original.)  Gallo contends that WD Energy's supplemental response "does

27  not make the [original] response any more coherent, and only confirms the willfully evasive character

28  of the original response."  Gallo points to findings of the Securities Exchange Commission and Judge

Ishii in a prior case against defendants that WD Energy's predecessor engaged in wash trades, including such transactions with Reliant Resources, Inc.  Gallo further notes that the Federal Energy Regulatory Commission has characterized wash sales as lacking legitimate business purpose to interfere with prices set by competitive forces.  Thus, Gallo concludes that WD Energy's supplemental answer fails to comply with the January 28 order because it vaguely asserts that WD Energy never entered into any illegal or anticompetitive agreement or that all of its agreements with competitors were not entered into with anticompetitive intent and did not have an anticompetitive effect.

### Gallo's Requested Sanctions As To Interrogatory No. 6

To remedy WD Energy's failure to serve a sufficient answer to Interrogatory No. 6, Gallo seeks to impose the following sanctions:

1.   An issue sanctions to find as a matter of fact that:

   a.   WD Energy engaged in conspiracy with horizontal competitors who are separate business entities and are unnamed participants; and

   b.   WD Energy's conspiracy with horizontal competitors had an anticompetitive intent;

   c.   WD Energy's acts caused prices charged to consumers of natural gas at PG & E Citygate and throughout California to increase during 2000 and 2001; and

   d.   As a result, prices charged to consumers, including Gallo, for natural gas at PG & E Citygate were in fact increased over prices that would have been charged but for that conduct.

2.   Evidence sanctions to preclude WD Energy to:

   a.   Offer at trial rebuttal evidence, including expert testimony, concerning the fact or effect of WD Energy's conspiracy with horizontal competitors; and

   b.   Offer evidence to challenge the scope or validity of Gallo's expert analysis on the effect of WD Energy's conspiracy with horizontal competitors on the price Gallo paid for natural gas.

3.   A terminating sanction to strike WD Energy's answer or other responsive pleading to Gallo's first amended complaint based on WD Energy's "continuing course of discovery

8

1   obstruction and abuse."

2       4.    A financial sanction that WD Energy pay Gallo's legal expenses to pursue this motion

3          and to attempt to obtain the discovery sought by Interrogatory No. 6.

4   **WD Energy's Contentions As To Its Responses to Interrogatory No. 6**

5       WD Energy points out that Interrogatory No. 6 addresses its denial of Gallo's allegation that WD

6   Energy conspired with horizontal competitors and argues that "a party is simply not required to

7   undertake the burden of stating all facts to support a *negative* proposition."  (Italics in original.)

8   **DISCUSSION**

9   **Discovery Sanctions**

10       Gallo contends that WD Energy has disrespected this Court's authority and orders to warrant

11   heavy discovery sanctions.  WD Energy argues that Gallo fails to substantiate drastic sanctions and that

12   there is a "complete disconnect between the discovery violations that Gallo alleges and the sanctions that

13   Gallo proposes."

14       Under F.R.Civ.P. 37(b)(2), if a party "fails to obey an order to provide or permit discovery" a

15   court "may make such orders in regard to the failure as are just," including to:

16       1.    Designate facts as established;

17       2.    Refuse to allow the disobedient party to support or oppose designated claims;

18       3.    Prohibit the disobedient party from introducing designated matters in evidence;

19       4.    Strike out pleadings or parts thereof;

20       5.    Stay further proceedings until an order is obeyed;

21       6.    Dismiss an action, proceeding or any part thereof; or

22       7.    Render judgment by default against the disobedient party.

23   F.R.Civ.P. 37 authorizes a district court, in its discretion, to impose a wide range of sanctions when a

24   party fails to comply with the rules of discovery or with court orders enforcing those rules.  *National*

25   *Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778 (1976); *Wyle v. R.J.*

26   *Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *United States v. Sumitomo Marine & Fire*

27   *Insurance Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).

28       Although the central factor to a F.R.Civ.P. 37(b)(2) sanction is "justice," *Valley Engineers, Inc.*

1  *v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998), *cert. denied*, 526 U.S. 1064, 119 S.Ct.

2  1455 (1999), the sanction "must be specifically related to the particular 'claim' which was at issue in

3  the order to provide discovery." *Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 707, 102

4  S.Ct. 2099 (1982).  The Ninth Circuit Court of Appeals has explained the need for F.R.Civ.P. 37(b)(2)

5  sanctions:

6       Litigants who are willful in halting the discovery process act in opposition to the
         authority of the court and cause impermissible prejudice to their opponents.  It is even
7        more important to note, in this era of crowded dockets, that they also deprive other
         litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

8

9  *G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978).

10      "Where it is determined that counsel or a party has acted willfully or in bad faith in failing to

11  comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those

12  rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment

13  by default against the party responsible for noncompliance." *G-K Properties*, 577 F.2d at 647.  "Where

14  the drastic sanctions of dismissal or default are imposed . . . the losing party's non-compliance must be

15  due to willfulness, fault or bad faith." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993);

16  *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985).  "[D]isobedient conduct

17  not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad

18  faith, or fault." *Henry*, 983 F.2d at 948 (quoting *Fjelstad*, 762 F.2d at 1341.)  A single willful violation

19  may suffice depending on the circumstances.  *Valley Engineers*, 158 F.3d at 1056.

20      In *National Hockey League*, 427 U.S. at 643, 96 S.Ct. 2778, the United States Supreme Court

21  explained the rationale for severe F.R.Civ.P. 37(b)(2) sanctions:

22       . . . as in other areas of the law, the most severe in the spectrum of sanctions provided by
         statute or rule must be available to the District Court in appropriate cases, not merely to
23       penalize those whose conduct may be deemed to warrant such a sanction, but to deter
         those who might be tempted to such conduct in the absence of such deterrent.

24

25  Nonetheless, sanctions which interfere with "a litigant's claim or defenses violate due process when

26  imposed merely for punishment of an infraction that did not threaten to interfere with the rightful

27  decision of the case." *Wyle*, 709 F.2d at 591.

28      Dismissal and default judgment are authorized only in "extreme circumstances." *See Fjelstad*,

762 F.2d at 1338.  "So, too, are orders taking the plaintiff's allegations as established and awarding judgment to the plaintiff on that basis."  *United States v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988).  Terminating sanctions are appropriate where a "pattern of deception and discovery abuse made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth would be available."  *See Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995).  To determine whether to impose a severe sanction of dismissal or default, a court considers:

1.      The public's interest in expeditious resolution of litigation;

2.      The court's need to manage its docket;

3.      The risk of prejudice to the party seeking sanctions;

4.      The public policy favoring disposition of cases on their merits; and

5.      The availability of less drastic sanctions.

*Valley Engineers*, 158 F.3d at 1057; *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996); *Henry,* 983 F.2d at 948; *Kahaluu Constr.*, 857 F.2d at 603; *Thompson v. Housing Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112 (1986).

"What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Valley Engineers,* 158 F.3d at 1057 (quoting *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019 (1991)).  Prejudice arises when the ability to go to trial of the party seeking F.R.Civ.P. 37(b)(2) sanctions is impaired.  *Adriana International*, 913 F.2d at 1412.  "Failure to produce documents as ordered, however, is considered sufficient prejudice. . . . [C]ontinuing refusal to comply with court-ordered production of documents constitutes interference with the rightful decision of the case." *Adriana International*, 913 F.2d at 1412. However, delay alone does not warrant a terminating sanction.  *See Kahaluu Constr.*, 857 F.2d at 604; *Mir v. Fosburg*, 706 F.2d 916, 919, n. 2 (9th Cir. 1983).

A three-part analysis determines whether a court "properly considered the adequacy of less drastic sanctions: (1) did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate, (2) did the court implement alternative sanctions before ordering dismissal, and (3) did the court warn the party of the possibility of dismissal before

11

1   actually ordering dismissal?" *Adriana International*, 913 F.2d at 1412-1413.  "But despite all this

2   elaboration of factors, we have said that it is not always necessary for the court to impose less serious

3   sanctions first, or to give any explicit warning." *Valley Engineers*, 158 F.3d at 1057.

4            With these standards in mind, this Court turns to WD Energy's supplemental interrogatory

5   responses and Gallo's requested discovery sanctions.

6            **WD Energy's Responses To Interrogatory Nos. 1, 2 And 4**

7   _____With its Interrogatory Nos. 1, 2 and 4, Gallo seeks the identity, and more precisely, the location

8   of a broad assortment of documents and communications within WD Energy's voluminous document

9   production.  WD Energy falls back on F.R.Civ.P. 33(d) to claim Gallo is just as able as WD Energy to

10  locate and compile the requested documents and communications.  WD Energy's supplemental

11  responses merely refer to broad categories of produced materials and guide Gallo to location of

12  documents and communications in an overbroad fashion.  With its January 28 order, this Court directed

13  WD Energy to put forth greater effort than its supplemental responses reflect.

14           Gallo is entitled to relief but overreaches by ignoring the breadth of information sought by

15  Interrogatory Nos. 1, 2 and 4 by seeking such drastic sanctions disconnected to the alleged

16  transgressions.  Although WD Energy does not come to this Court in complete innocence, the evidence

17  does not reflect, on the issues surrounding WD Energy's interrogatory responses, conduct sufficient for

18  evidence preclusion or terminating sanctions.  Although tempted to designate certain facts proposed by

19  Gallo as established, this Court, at this time, takes a less severe approach.

20           The gist of Interrogatory Nos. 1, 2 and 4 is the location of documents and communications

21  reflecting natural gas transactions communicated to reporting firms.  WD Energy claims it faces a

22  daunting task to locate such documents and communications despite Gallo's claims that WD Energy has

23  compiled such information for CFTC.  To efficiently and effectively locate the documents and

24  communications, Gallo is best served to depose WD Energy's person(s) most knowledge of the location

25  of such documents.  If WD Energy fails to provide such person(s) and to cooperate professionally and

26  completely in such a deposition(s) to locate the documents and communications, this Court will impose

27  sanctions greater than the relief granted here.

28  / / /

Case 1:03-cv-05412-LJO-DLB   Document 466   Filed 05/11/05   Page 13 of 15

***Order***

This Court:

1.    ORDERS WD Energy, no later than May 27, 2005 or on a later date agreeable to Gallo, to produce at WD Energy's expense for a deposition(s) at the offices of Gallo's San Francisco counsel the person(s) most knowledgeable of the location of the documents and communications subject to Gallo's Interrogatory Nos. 1, 2 and 4.  Gallo and WD Energy shall split and equally share the deposition costs, including court reporter fees, transcript expenses, etc.; and

2.    ADMONISHES WD Energy that its failure to comply with this order and to provide meaningful deposition testimony will subject WD Energy to sanctions greater than the relief granted here.

**WD Energy's Response To Interrogatory No. 6**

As noted by WD Energy, Gallo's Interrogatory No. 6 seeks facts to support WD Energy's denial of Gallo's allegation that defendants engaged in a conspiracy with horizontal competitors.  Despite Gallo's claim that it merely seeks clarification of WD Energy's original response, the essence of Interrogatory No. 6 is to prove a negative, that is, that defendants did not engage in a conspiracy with horizontal competitors.  The Central District of California has explained the difficulty of interrogatories seeking facts to support a denial of an allegation:

> One court has aptly described the problem presented by interrogatories of the type served by defendants, which purport to require a party to specify all facts, documents, and witnesses that support the denial of a statement or allegation of fact.  As it explained in holding that such interrogatories placed an unreasonable burden on the responding party:
>
> > "Part of that burden arises in this case by the characteristic common to these interrogatories for asking defendant to provide 'all' facts in support of its denials of allegations pled by plaintiff.  To state 'all' facts in support of a negative proposition, of course includes an inventory of evidence which defendant itself would offer at trial to refute the claims of plaintiff.  Beyond that, however, it would further require defendant to provide essentially a review of facts and commentary to support its evaluation, if any, that the anticipated evidence of plaintiff as to each disputed paragraph of the complaint simply lacks weight or credibility.  The request for 'all' facts, based not only upon knowledge, but also upon simply information and belief, adds a significant and unreasonable burden to the task of the answering party."

13

1  *Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 (C.D. Cal. 1998) (quoting *Lawrence v. First*

2  *Kansas Bank & Trust Co.*, 169 F.R.D. 657, 663 (D. Kan. 1996)).

3       WD Energy's supplemental response highlights the difficulty of Gallo's denial interrogatory.

4  To apparently satisfy Gallo, WD Energy would need to itemize each transaction with horizontal

5  competitors and explain how such transaction was not a conspiracy with anticompetitive effect to

6  increase natural gas prices.  Although this Court expected, for WD Energy's sake, a more detailed

7  response from WD Energy other than a restatement of its denial, Gallo has failed to substantiate grave

8  sanctions in light of the difficulty of denial interrogatories and the task to disprove a negative.  This

9  Court expects Gallo to point out at trial WD Energy's meager, Court-ordered supplemental response and

10 to seek to preclude evidence beyond the scope of WD Energy's response.  *See* F.R.Civ.P. 26(e).

11                                      ***Order***

12       This Court DENIES Gallo sanctions as to WD Energy's supplemental response to Interrogatory

13 No. 6.

14                              **Monetary Sanction**

15       Gallo seeks to impose on WD Energy a $1,250 sanction for Gallo's costs to pursue this discovery

16 sanctions motion.  In lieu of F.R.Civ.P. 37(b)(2)(A) – (E) orders or in addition thereto, "the court shall

17 require the party failing to obey the order or the attorney advising the party or both to pay the reasonable

18 expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was

19 substantially justified or that other circumstances make an award of expenses unjust."  F.R.Civ.P.

20 37(b)(2).  F.R.Civ.P. 37(b)(2) "must be distinguished from Rule 37(a) which provides for the award of

21 expenses resulting from efforts to secure an order compelling discovery."  *Liew v. Breen*, 640 F.2d 1046,

22 1051 (9th Cir. 1981).  Thus, "attorney-time before and during" a hearing in which a court order is

23 imposed is "not attorney-time incurred on account of failure to obey an order."  *Liew*, 640 F.2d at 1051;

24 *see also Wm. T. Thompson Co. v. General Nutrition Corp.*, 104 F.R.D. 119, 122-122, n. 1 (C.D. Cal.

25 1985).

26       Although this Court does not order the specific relief sought by Gallo, Gallo was compelled to

27 expend fees and efforts to redress matters subject to the January 28 order.  WD Energy's failure to

28 substantially comply with the January 28 order as to Gallo's Interrogatory Nos. 1, 2 and 4 or to suggest

                                          14

meaningful options to address Gallo's concerns necessitated Gallo's motion and this Court's intervention.  WD Energy has failed to observe this Court's orders and directives to cooperate in discovery, to cease game playing and obstruction, and to engage in good faith, professional conduct. As such, Gallo's requested $1,250 sanction is warranted.

### *Order*

This Court ORDERS WD Energy and its counsel, no later than May 27, 2005, to pay a $1,250 sanction to Gallo.

IT IS SO ORDERED.

**Dated:   May 11, 2005**                          **/s/ Lawrence J. O'Neill**
66h44d                                          UNITED STATES MAGISTRATE JUDGE