1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **E. & J. GALLO WINERY,** | ) | **CV F 03-5412   AWI LJO** |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER DENYING** |
| **v.** | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISS, OR IN THE** |
| **ENCANA ENERGY SERVICES, INC.,** | ) | **ALTERNATIVE FOR** |
| **a Delaware corporation, formerly known** | ) | **SUMMARY JUDGMENT OR** |
| **as PANCANADIAN ENERGY** | ) | **ADJUDICATION, OR TO** |
| **SERVICES INC.; ENCANA** | ) | **DISMISS PURSUANT TO** |
| **CORPORATION, a Canadian** | ) | **FRCP 12(b)(3)** |
| **corporation, formerly known as and** | ) | |
| **successor to PANCANADIAN** | ) | |
| **ENERGY CORPORATION,** | ) | Document #375 |
| | ) | |
| **Defendants** | ) | |
| | ) | |

**INTRODUCTION**

    This is an action for damages and declaratory relief by plaintiff E. & J. Gallo Winery

("Gallo") against defendants EnCana Corp. ("EnCana"), a Canadian producer of natural gas,

and WD Energy Services, Inc. ("WD") (formerly EnCana Energy Services, formerly Pan

Canadian Energy Services, Inc.), a wholly-owned marketing subsidiary of EnCana Corp.

(collectively, "Defendants").  On January 24, 2005, Gallo filed its first amended complaint

for damages, disgorgement/restitution , constructive trust, and injunctive relief (the "FAC"),

which differs from the original complaint in that it clarifies that Gallo is claiming damages on

behalf of itself and Gallo's affiliated companies.  On February 9, 2005, Defendants filed the

instant motion to dismiss pursuant to FRCP 12(b)(6), or in the alternative to transfer or

dismiss pursuant to FRCP 12(b)(3), or in the alternative to strike allegations in the complaint

(the "Motion to Dismiss the FAC").  Defendants contend the preclusive effects of prior

litigation between Gallo and other energy trading companies requires dismissal of Gallo's

FAC.  In the alternative, Defendants contend the forum selection clause in the contract for

sale of natural gas requires transfer of this case to the Northern District of California.  For the

reasons that follow, the court will deny Defendants' motions.

## PROCEDURAL HISTORY

The complaint in this action was filed on April 9, 2003.  On June 11, 2003

Defendants filed motions to dismiss, strike or stay the complaint, which were withdrawn on

July 24, 2003, after which the court granted a stay in the proceedings pending the resolution

of Defendants' motion to transfer the case to the Multidistrict Litigation Panel for

consolidation with similar cases.  The stay was lifted on January 14, 2004, following the

decision of the multidistrict panel to not accept the case and leave the case with this court.

Thereafter, Defendants filed a motion to disqualify Judge Ishii on January 30, 2004, and a

motion to dismiss or strike portions of the complaint or to transfer the case on February 11,

2004.  These motions were both ultimately denied.

On August 28, 2004, Defendants filed a motion to limit Gallo's damage claim to

those damages actually demonstrated by Gallo.  Defendants also moved to transfer the action.

The court granted in part Defendants' motion to limit Gallo's claims but granted Gallo leave

to amend its complaint.  On January 24, 2005, Gallo filed its FAC alleging essentially

identical claims for relief as the original complaint, but clarifying that Gallo was seeking

damages for itself and all its subsidiary companies.  The instant motion to dismiss was filed

on February 9, 2005.  Gallo's opposition was filed on February 28, 2005, and Defendants'

reply was filed March 7, 2005.  On April 20, 2005, the court took the matter under

submission subject to the court's power to later schedule additional briefing or oral argument.

# FACTUAL BACKGROUND

In the instant motions, Defendants move to dismiss primarily on the ground the action at bar is precluded by a prior litigation wherein Gallo's parent corporation[1], Dry Creek, sued El Paso Natural Gas Company, Mojave Pipeline Company, El Paso Merchant Energy, L.P., and Coral Energy Resources, L.P. (the "El Paso action").  The facts pertinent to Defendants' motion to dismiss therefore include the facts alleged in the El Paso Action and in the FAC. The facts set forth below are from the complaints in the respective cases unless otherwise noted.

## I. The El Paso Action

California imports the majority of the natural gas used in the state.  Natural gas imported into the state enters California at four locations.  The two locations pertinent to this motion are Topock, on the California-Arizona border, and PG&E Citygate on the California-Oregon border.  The complaint in the El Paso action alleges that defendant El Paso Natural Gas Company controlled the pipeline to the Topock location from gas production facilities in the southwestern United States.  At Topock, El Paso sold natural gas to the major public gas suppliers, PG&E and So Cal Gas under firm, uninterruptible supply contracts.  The public utilities were allowed to turn back unused firm supply capacity to El Paso and did so, turning back approximately 18% of total pipeline capacity.  The El Paso complaint alleges that in 2000, following the expiration of contracts allocating its excess capacity to Dynegy Corporation, El Paso sold all of its 1,220 Mmcf/d of available excess pipeline to its marketing subsidiary El Paso Merchant Energy, L.P., in a secret rigged bid.  The complaint also alleges El Paso Merchant Energy then conspired with another member of the El Paso family of companies, Mojave Pipeline Company, to provide intrastate transport of the excess

---

[1]     In light of the pleadings in the FAC, it is unclear whether Dry Creak is parent or subsidiary of Gallo.  The difference is not significant for purposes of this discussion given Gallo's acknowledgment in the FAC that Gallo identifies itself as the purchaser of natural gas for all of the Gallo affiliated companies.

capacity natural gas at a discounted rate which was kept secret until the bidding period on

excess pipeline capacity contracts was closed.  Because El Paso Merchant was able to hedge

its risks by establishing a secret discounted rate for natural gas delivery that was substantially

less than what other bidders would be forced to pay to use the public utility lines, El Paso

Merchant was able to bid for the entire excess capacity at about twice the rate of any of the

other bidders, thereby securing for itself all of the excess pipeline capacity at the Topock

entry point.

The El Paso complaint also alleges that by establishing control over all of the excess

pipeline capacity at Topock, El Paso Natural Gas Company, Mojave Pipeline Company and

El Paso Merchant Energy (the "El Paso defendants") controlled the marginal supply of

interruptible gas into California and so were able to manipulate prices for the natural gas spot

market throughout California.  The El Paso complaint alleges the El Paso defendants

exploited that market power by, among other acts, artificially constraining capacity in the

Mojave Pipeline, thereby limiting the ability of purchasers to purchase and store excess gas

during times of lesser demand.  Purchasers were then forced to pay inflated prices during

winter periods of peak demand.  Dry Creak alleged the collusive behavior on the part of the

El Paso defendants continued throughout the spring, summer and fall of 2000-2001, and

culminated in price gouging during the winter of 2001.  Dry Creak alleged that the collusive

behavior of the El Paso defendants resulted in non-competitive gas pricing not only for gas

on the spot market at Topock, but also on spot markets throughout the state, including at

PG&E Citygate.

The El Paso complaint alleges Defendant Coral Energy Resources ("Coral") is a

marketer of natural gas in California.  The Complaint alleges Coral sold natural gas to Dry

Creek under contract at prices Coral knew were the result of market manipulation by the El

Paso Defendants.  The complaint also alleges Coral communicated pricing information with

competitors in the natural gas marketplace and collusively agreed on pricing that was

4

artificially inflated as a result of the anticompetitive activities of the El Paso Defendants.

The El Paso action was a state action before the Alameda County Superior Court. The first cause of action was for violation of California's Cartwright Act, California Business Code sections 16720, et seq. In the first cause of action Dry Creek alleged with respect to the El Paso defendants only:

> The specific actions of defendants, and each of them, that constituted prohibited conduct under the Cartwright Act, include, but are not limited to, bid rigging , negotiating secret discounts for capacity on the connecting Mojave Pipeline, withholding available pipeline capacity, and agreeing to refrain from offering discounted interruptible capacity, all for the purpose of unfairly and unlawfully driving up the prices of natural gas delivered to and into California and natural gas transportation.

El Paso Complaint at ¶67.

The second cause of action in the El Paso Action is also pled only against the El Paso defendants and alleges violation of California Business and Professions Code section 17045, which prohibits secret payments or allowances. The second cause of action alleged the El Paso defendants "secretly negotiat[ed] discounts for capacity rights on the Mojave Pipeline for the purpose of El Paso Merchants to outbid competitors for the capacity rights offered by El Paso during the open bidding season. . . ." El Paso Complaint at ¶ 76.

The fourth and fifth causes of action in the El Paso Action were pled against Coral Energy Resources only and alleged California common law claims of breach of contract and breach of the implied covenant of good faith and fair dealing. Specifically, the complaint alleged Coral Energy "failed to independently set prices for the natural gas and transportation supplied to Gallo Glass;" set prices according to the PG&E Citygate prices, which Coral Energy knew to be non-competitive, and consulted with other natural gas marketing companies about pricing.

The third cause of action in the El Paso action alleged unfair business practices in violation of California Business and Professions Code, sections 17200 et seq. against all defendants.

5

On or about June 4, 2002, the El Paso Action was consolidated with a number of similar actions in the Natural Gas Anti-Trust Cases I, II, III, and IV ("Consolidated Action"). The Master Complaint in the northern California cases was filed on behalf of both individual and class plaintiffs against the El Paso family of companies including the defendants in the El Paso Action.  Dry Creek is one of the individual plaintiffs in the Consolidated Action.  The Consolidated Action also included Dry Creek's common law contract claims against Coral Energy.  On or about November 1, 2002, the plaintiffs in the Consolidated Action filed their First Amended Master Complaint, which is the operative pleading in that case for purposes of this case.

Although the First Amended Master Complaint is relatively richer in factual detail than the complaint in the El Paso Action, the illegal conduct alleged by the individual plaintiffs against the defendants in the Consolidated Action is essentially the same as the allegations made by Dry Creek in the El Paso Action.  In particular, the first cause of action in the First Amended Master Complaint alleged on behalf of the individual plaintiffs as follows:

> The specific actions of the Defendants, and each of them, that constituted prohibited conduct under the Cartwright Act, include, but are not limited to, negotiating secret discounts for capacity on the connecting Mojave Pipeline, bid-rigging, making illicit agreements among Defendants to refrain from competition in marketing of firm capacity, agreeing to refrain from offering discounted interruptible capacity, and improperly manipulating transmission flows, pipeline deliveries, operating pressures, compressor outages, maintenance schedules, and the nomination and capacity allocation process to cause or exacerbate congestion on the pipelines, all for the purpose of unfairly and unlawfully driving up the prices of natural gas delivered to and into California.

First Amended Master Complaint at ¶ 161.

The second cause of action in the First Amended Master Complaint is the same claim for violation of section 17045, secret discounts, as was alleged in the El Paso complaint.  In addition to the causes of action alleged in the El Paso Action with respect to the El Paso Defendants, the First Amended Master Complaint alleges causes of action for unlawful tying

of the price of natural gas with the transportation costs in violation of sections 16720 and 16727 of the California Business and Professions Code, common law monopolization and attempted monopolization, an unfair business practices in violation of section 17200 of the California Business and Professions Code.  The causes of action alleged against Coral Energy in the First Amended Master Complaint are essentially identical to the causes of action alleged in the El Paso Complaint.

Of significance, there are no allegations in any pleading pertaining to the Consolidated Action or the El Paso Action that allege wash trades or basis swaps or any similar activity.

On March 12, 2003, the court in the Consolidated Action sustained Coral Energy's demurrer as to every count pled against it in the First Amended Master Complaint.  All causes of action against Coral Energy were dismissed without leave to amend.  The court explained Dry Creek had failed to allege facts that could support the claim Coral Energy had breached its agreement with Dry Creek, since the rates charged for natural gas were in accordance with price-setting terms of the agreement.  Because there was no breach of contract, there was no breach of implied duty of good faith and fair dealing and no predicate act that could be termed an unfair business practice within the meaning of section 17200 of the California Business and Professions Code.

Subsequently, the plaintiffs Dry Creek and Gallo Glass entered into a settlement agreement with the El Paso Defendants, the terms of which included a cash settlement in excess of $7 million and the dismissal with prejudice of the entire action as to all remaining parties.

## II.  The EnCana Action

Numerous prior opinions of the court have discussed the general factual background that pertains to the EnCana action.  These facts need not be repeated in their entirety here. Pertinent to the instant motion is the specific nature of the illegal acts alleged by Gallo

against Defendants and certain differences in wording between the original complaint in this

case and the FAC.

The FAC summarizes the illegal acts of the EnCana Defendants as follows in

pertinent part:

> Commencing in the Summer of 2000 and continuing until late 2001,
> by their marketplace behavior and agreement as to pricing, defendants, and the
> unnamed co-conspirators, avoided competing with each other in the pricing
> and sale of "bundled" natural gas in California, in the pricing and sale of
> interstate gas transportation contracts into California in the secondary (or
> replacement) market, and in the pricing and sale of the derivatives supposedly
> derived from California natural gas market prices.  This agreement is
> evidenced by, among other things, the daily exchange of price information by
> and among defendants and the unnamed co-conspirators and the use of
> computer software programs and websites by defendants and the unnamed co-
> conspirators to collusively establish Defendants' and the unnamed co-
> conspirators' price of "basis" and thus the price of bundled natural gas pricing
> (and vice-versa) at artificially high levels during the relevant time.

> [¶ . . . ¶]

> Defendants and the unnamed co-conspirators also agreed to do "wash"
> transactions under which they simultaneously bought and sold from each other
> the same natural gas and natural gas "basis" swaps and other commodities <u>at
> the same price on the same day</u>.  The "wash trades" created the false
> appearance of demand for and shortage of supply of natural gas and natural
> gas transportation into California.  The " wash trades" also served as a method
> of communicating collusive price information and collusively manipulating
> the supposedly independent third party published indexes of prices used to
> determine the settlement amount of natural gas contracts and natural gas
> derivatives, including "basis" swaps.

FAC at ¶¶ 19, 21.

Although the FAC is substantially the same as the original complaint, several changes

were made that are of significance to this motion.  First, Gallo identified itself as the

purchaser of natural gas during the relevant period on behalf of all its affiliated companies.

FAC at ¶ 26.  Second, the FAC makes it clear that the natural gas it purchased that is the

subject of this action entered California through the PG&E Citygate on the California-Oregon

border.  FAC at ¶ 12.  The FAC also clarifies that the period during which marketplace

manipulation is alleged to have occurred goes from the summer of 2000 until late in 2001.

The first five claims for relief alleged in the FAC are identical to the corresponding claims

8

alleged in the original complaint.  The first claim is for violation of section 1 of the Sherman

Antitrust Act, 15 U.S.C. § 1.  The second claim is for violation of California's Cartwright

Act.  The third claim is for unfair business practices in violation of California Business and

Professions Code section 17200, et seq.  The fourth and fifth claims for relief are California

common law claims for unjust enrichment and establishment of a constructive trust,

respectively.  The sixth claim for relief, which was added to the FAC, is a claim for violation

of the California Uniform Fraudulent Transfer Act, California Civil Code section 3439, et

seq.

## LEGAL STANDARD

Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal

Rules[2] of Civil Procedure.  When a defendant challenges the legal sufficiency of a complaint,

the court's review is limited to the complaint.  Cervantes v. City of San Diego, 5 F.3d 1273,

1274 (9th Cir.1993).  As a general matter, a district court may not consider any material

outside of the pleadings when ruling on a Rule 12(b)(6) motion.  Lee v. City of Los Angeles,

250 F.3d 668, 688 (9th Cir.2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  In

the instant motion both parties rely heavily on discovery material external to the pleadings.

If the parties present the court with evidence outside the pleadings and the court considers the

evidence, the court must convert the Rule 12(b)(6) motion into a motion for summary

judgment.  Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932, 934-35 (9th

Cir.1996).  Because the parties rely upon evidence outside the pleadings, the court will

construe the motion as a motion for summary judgment pursuant to Rule 56.

Summary judgment is appropriate when it is demonstrated that there exists no

genuine issue as to any material fact, and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

---

[2]     Reference to Rules hereinafter are to the Federal Rules of Civil Procedure unless otherwise specified.

9

Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755

F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d

1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has the burden

of proof at trial, that party must carry its initial burden at summary judgment by presenting

evidence affirmatively showing, for all essential elements of its case, that no reasonable jury

could find for the non-moving party.  United States v. Four Parcels of Real Property, 941

F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259

(6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y

Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving

for summary judgment bears the burden of proof on an issue, he cannot prevail unless the

evidence that he provides on that issue is conclusive.")

### DISCUSSION

**I. Preclusive Effect of the El Paso Action**

The basis for Defendants' motion to dismiss pursuant to Rule 12(b)(6) is their

contention that this case is barred by the doctrine of *res judicata* where the state court entered

judgment in the El Paso action dismissing the case with prejudice.  "The preclusive effect of

a state court judgment in a subsequent federal lawsuit generally is determined by the full faith

and credit statute, which provides that state judicial proceedings 'shall have the same full

faith and credit in every court within the United States . . . as they have by law or usage in the

courts of such State . . . from which they are taken.'  28 U.S.C. § 1738."  Marrese v.

American Academy of Orthopedic Surgeons, 470 U.S. 373, 380 (1985).  A consent judgment

is as conclusive as to any matter settled as to any matter actually litigated following trial.

Safe Flight Instrument Corp. v. United Control Corp., 576 F.2d 1340, 1344 (9th Cir. 1978). A settlement in a state court that releases claims that are exclusively within the jurisdiction of the federal courts may preclude subsequent action in the federal court on the exclusively federal claims.  See Matsushita Elec. Indus., Ltd. v. Epstein, 516 U.S. 367, 373-374 (1996). In deciding whether a state court's judgment precludes a subsequent action in federal court on claims that are exclusively federal claims, the court first determines whether the proceeding in the state court would have preclusive effect in another court of that state.  If the law of preclusion in the state rendering the judgment would preclude the subsequent action, the federal court determines whether "'as an exception to § 1738' it 'should refuse to give preclusive effect to [the] state court judgment." Id. at 375.

"'The doctrine of *res judicata* precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction. [Citation] "any issue necessarily decided in such litigation is conclusively determined as to the parties of their privies if it is involved in a subsequent lawsuit on a different cause of action." [Citation.]' [Citation.]"  Nathanson v. Hecker, 99 Cal.App.4th 1158, 1162 (2nd Dist. 2002) (quoting Levy v. Cohen, 19 Cal.3d 165, 171 (1977).  The court accepts, for purposes of the present discussion, Defendants representation of the elements of *res judicata*.  A judgment in a prior action precludes litigation of the same claims where: (1) the prior action was a final judgment on the merits; (2) the present action presents the same cause(s) of action as the prior action, regardless of the labeling of the causes of action; and  (3) the parties to the present action were parties in the prior action or in privity with the parties in the prior action. Buswick v. Workmen's Comp. Appeals Bd., 7 Cal.3d 967, 974 (1972).  The sister doctrine to *res judicata* is the doctrine of collateral estoppel "under which a prior judgment between the same parties operates as an estoppel as to those issues actually and necessarily decided in the prior action."  Whittlesey v. Aiello, 104 Cal.App.4th 1221, 1226 (3d Dist. 2002).  Collateral estoppel applies if: "(1) the issue necessarily decided in the previous is identical to the issue

sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit." In re Joshua J., 39 Cal.App.4th 984, 993 (4th Dist. 1995).

Having thus set forth the elements of *res judicata*, the court cannot help but notice there is a good deal less to Defendants' motions than meet the eye.  Defendants contend each of the elements of *res judicata* are fulfilled by the facts of this case.  As to each of the elements, save the first, the court disagrees.

### A.  Prior Action Resulting on a Judgment on the Merits

The parties do not dispute that the El Paso action resulted in a dismissal with prejudice of the plaintiff's claims against Coral Energy and that the remainder of the claims against the El Paso defendants were resolved through a negotiated settlement. It is also not disputed that both the dismissal of Coral Energy and the consent judgment against the El Paso defendants constitute final judgments on the merits for purposes of *res judicata*.  Thus the first element of *res judicata* is met.

### B.  Identity of the Causes of Action

The doctrine of *res judicata* bars a party or privy to a party from relitigating the same cause of action.  City of Simi Valley v. Superior Court, 111 Cal.App.3d 1077, 1082 (2nd Dist. 2003).

> California follows the primary right theory of Pomeroy; i.e., a cause of action consists of 1) a primary right possessed by the plaintiff, 2) a corresponding primary duty devolving upon the defendant, and 3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty.  Thus, two actions constitute a single cause of action if they both affect the same primary right.

Id.

It is clear that non-identity of the *statutes* under which the first and subsequent actions are brought does not necessarily bar the application of *res judicata*.  A state action that "affords the same right or interdicts the same wrong" may support the defense of *res judicata* even if the second action is brought under a statute that grants original jurisdiction to the

12

federal courts.  See generally Nash County Bd. Of Education v. Biltmore Company, 640 F.2d 484 (4th Cir. 1981) (holding state action prohibiting anti-competitive business practices could preclude subsequent suit under Sherman Antitrust Act where the wrongs addressed and the remedies provided were identical.  Thus, the fact that the El Paso action was a state action with the primary allegation being violation of California's Cartwright Act, and the instant action is a federal action primarily under the Sherman Antitrust Act, does not necessarily mean a court could not find the causes of action in the El Paso and instant actions identical for purposes of *res judicata*.  Defendants' *res judicata* claim fails not because the statutes pled in the two cases are different, it fails because the rights of the plaintiffs that are alleged to have been violated are fundamentally different.

Defendants contend the primary right that is alleged to be violated in this case and in the El Paso action is the right to be free of collusive acts of market players that manipulate natural gas markets resulting in artificially inflated prices.  Defendant contend the injuries suffered by Plaintiffs resulted from exactly the same collusive conduct causing manipulation of gas markets in California.  Defendants' contentions suffer from over-generalization.

Defendants' allegations confuse the category of conduct with the specific delict or wrong done to the plaintiff.  Defendants refer consistently to Gallo's allegations of concerted action, collusion and conspiracy in this case and of allegation of the same behaviors in the El Paso action.  The implication is that the behaviors in both cases constitute identical wrongs because they are both instances of collusion.  The flaw in Defendants' logic is fairly obvious.  Defendants' argument substitutes the label for the behavior for the operative facts that constitute the behavior and implies that the facts are the same because the labels are the same.  The court disagrees.  There are innumerable ways to collude and innumerable sets of acts that parties can conspire to carry out that produce the end result of manipulation of the marketplace.

Identity of cause of action implies not only identity of conspiracy, but also identity of

13

the operative facts in support of that conspiracy.  See id. at 488 (identity of cause of action found where specific wrongful act, conspiracy and operative facts supporting conspiracy are present).  What prevents the court from finding the causes of action were identical is the non-identity of the wrongs alleged and the specific operative facts in the two cases.  In the El Paso action, the specific wrongs alleged against the El Paso defendants were the physical restriction of flow to create an artificial shortage of natural gas during periods of peak use, bid rigging, and negotiating secret discounts.  In the present action, the wrongs alleged are the carrying out of sham trades to produce the false appearance of sale of spare pipeline capacity, the submission of information to trade publications falsely representing high demand for pipeline capacity, and collusive price information sharing.  The physical situs of the wrong alleged in the El Paso action was at Topock on the California-Arizona border.  In the present action the wrong is alleged to have occurred at PG&E Citygate on the California-Oregon border.  The conspiracy that was alleged in the El Paso action was the conspiracy to share pricing information where the pricing was known to be the result of market manipulation.  In the instant action the conspiracy alleged was the conspiracy to engage in sham trades.  Beyond question, the instant case involves operative facts and alleged wrongs that are distinct and separate from the operative facts and alleged wrongs of the El Paso action.  The two cases cannot, by any stretch of the imagination, be held to share the same or similar causes of action.

### C.  Identity of the Parties

As an initial matter, Gallo cites Bernhard v. Bank of America Nat. Trust & Savings Ass'n, 19 Cal.2d 807, 813 (1942), for the proposition that current California law does not require that *both* parties in the instant action must have been parties or privies to parties in the first action.  In Bernhard, the California Supreme Court examined the traditional rule requiring identity of the parties or privity with parties in the first action in the light of the common exception that allows the application of *res judicata* where a judgment in favor of

1   the defendant in the first case necessarily immunizes the defendant in the second case.  Such

2   cases commonly arise where the first action is against the master and the second against the

3   servant.  See id. at 812.  Rather than retain the requirement for mutuality and its attendant

4   exceptions, the Bernhard court held that the privity requirement in California requires only

5   that the party against whom the defense of *res judicata* is asserted be a party to the first

6   action, or in privity with a party in the first action.  Id. at 813.  Thus, most California

7   decisions employ the privity requirement set forth in Bernhard, and look to analysis of the

8   identity of the claims to determine if a non-party to the first action may exert a *res judicata*

9   defense against an opponent that was a party or a privy to a party in the first action.  See, e.g.

10  Nathanson v. Hecker, 99 Cal.App.4th 1158, 1162 (2nd Dist. 2002).  In some cases, California

11  courts examining the issue of privity base their determination on the reasonable expectation

12  of the parties, particularly the non-successful party in the first action to be bound by the

13  judgement in the first action.  See Victa v. Merle Norman Cosmetics, Inc., 19 Cal.App.4th

14  454, 464 (2nd Dist. 1993).

15          This court finds merit in Gallo's contention that privity is not an issue in this case

16  because there is no doubt that the party against whom *res juducata* is being exerted, Gallo,

17  was a party to the first action.  Nonetheless, the court considers it worthwhile to briefly

18  address Defendants' contentions with regard to privity in the context of the extent to which

19  the judgments in the El Paso action may reasonably be expected to bind the parties in this

20  action.

21          In the El Paso action, Gallo, as privy to the plaintiff Dry Creek, received a favorable

22  judgment as to the El Paso defendants and an unfavorable judgment as to Coral Energy.  The

23  contract claims against Coral Energy, which were the only claims against that defendant,

24  were dismissed because the terms of the contract were not breached.  Because the judgment

25  with respect to Coral Energy was based solely and exclusively on the contract between the

26  parties, a party claiming preclusion would be required to show that the finding of non-breach

27

28                                                   15

of the Coral energy contract somehow immunized that party from the claims asserted against it in this case.  <u>Nathanson</u>, 99 Cal.App.4th at 1162 .  It does not matter whether the facts are analyzed as representing an issue of privity or of identity of the actions.  Defendants cannot claim preclusion either way.  The EnCana defendants were not parties or privies to the contract between Coral Energy and Gallo or Dry Creek.  Therefore, Gallo cannot be expected to be bound by the finding of non-breach when it asserts claims against the EnCana defendants for wrongs that were not implicated by the contract.  Further, the finding of non-breach as to that contract has no factual connection to the present case where the EnCana defendants are alleged to have committed wrongs that are independent of any contract between the parties.  Defendants' assertions that WD was a coconspirator with Coral Energy in setting prices collusively according is unavailing because Coral Energy was not sued for conspiracy or collusive or anti-competitive pricing.  The issue of collusion or conspiracy was not decided on the merits as to Coral Energy.

As to the El Paso defendants in the El Paso action, the preclusive effect of the consent judgment is only as extensive as the terms of the settlement agreement specify.  <u>See</u> <u>Matsushita</u>, 516 U.S. at 371-372 (analyzing preclusive effect of a class action settlement in the light of the terms of the settlement agreement). In the El Paso action, the settlement agreement, by its own terms extended only to the named defendants and specifically provided the agreement would not operate as retraxit as to any other party or to claims not specifically settled.

Further, it must be remembered that the settlement agreement operated as a judgment on the merits in favor of Gallo.  Where a plaintiff obtains a judgment against a defendant, the doctrine of *res judicata* applies where the action served to enforce one of two or more alternative and mutually exclusive remedies.  This rule prevents multiple recoveries by a plaintiff.  <u>Busick v. Workmen's Compensation Appeals Bd.</u>, 7 Cal.3d 967, 973 (1972).  Where double recovery for the same wrong is not an issue, and where joinder of the other

16

defendant is not mandatory, there is no doctrine preventing the plaintiff from suing other defendants who were not parties in the first action for the commission of the same or similar wrongs.  Here, there is no indication double recovery for the same wrongs is a consideration. As previously discussed, this case implicates different claims supported by different operative facts from the El Paso Action.

To the extent identity of parties or privity with parties is germane at all to the analysis of the preclusive effects of the El Paso action, the court finds privity is lacking between any of the defendants in this case and any of the defendants in the El Paso action.

Defendants have failed to demonstrate the judgments in the El Paso action are identical to those in the present action and, to the extent identity of the parties may be at issue, Defendants have failed to demonstrate they were in privity with the defendants in the El Paso Action.  Application of the doctrine of *res judicata* is therefore not warranted in the present case.  To the extent Defendants might invoke the sister doctrine of collateral estoppel, that doctrine is also not warranted because of the non-identity of the issues implicated in this action and in the El Paso action.  Defendants have failed to point to a single issue or issues that were necessarily decided in the El Paso action that are at play in the instant case.

**II. Proper Forum**

Defendants again move for dismissal pursuant to Rule 12(b)(3) in order to enforce the forum selection clause in the Agreement.  As Gallo points out, the instant motion to dismiss represents Defendants' fourth Rule 12 motion and their second motion to dismiss or transfer based on the forum selection clause.  Defendants previously moved for dismissal on the grounds of forum selection clause on August 10, 2004.  Doc. 130.  The court denied that request as moot on October 31, 2004.  However, the court  briefly addressed the merits of the motion in an attempt to save the parties and the court time and effort when Gallo submitted its anticipated First Amended Complaint.  In the court's Memorandum Opinion and Order of October 31, 2004, the court opined:

Gallo contends the forum selection provision of the Agreement is inapplicable because the claims alleged in the complaint do not arise out of the Agreement. Although the court has been required to reference the terms of the Agreement to determine the proper parties to the instant action, the complaint as currently pled does not reference the Agreement and the allegations set forth in the complaint do not implicate its provisions. See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.") In the instant case, the behavior alleged in the complaint refers entirely to acts that occurred between Defendants and unnamed co-conspirators and which occurred both before and during the term of the Agreement, but which are alleged to have transpired entirely outside the agreement. The court finds Gallo's argument with respect to Defendants attempt to invoke the forum selection clause is persuasive, and so would deny any motion to dismiss or transfer if the motion were before the court in the context of an amended pleading that is substantially similar to the current complaint.

In addition, and perhaps more persuasively in the instant case, the court finds Defendants have waived any invocation of the forum selection clause. As previously discussed, the parties to the Agreement included Gallo as well as Gallo Glass. To the extent it could reasonably be argued that the forum selection clause demanded a transfer of the case to another court, that argument was as applicable to Gallo as it would have been to Gallo Glass or any other Gallo entity that participated in the purchase of gas under the Agreement. As Gallo points out, Rule 12 provides that any objection to venue must be made in connection with the first motion pursuant to Rule 12 or the objection to venue is waived. See City of South Pasadena v. Mineta, 284 F.3d 1154, 1156 (9 Cir. 2002) ("most jurisdictional objections--such as defects in personal jurisdiction, venue or service of process--are waived unless asserted early in the litigation"). The reason for the rule is plain. A party cannot sit on its forum selection rights, allowing a court to invest its resources in the resolution of the action, until such time as things go unfavorably. To allow late invocation of a forum selection clause would be to countenance forum shopping at its most wasteful.

The court finds its opinion of October 31, 2004, unchanged in the light of Defendants current attempt to invoke the Agreement's forum selection clause. Defendants contend that the FAC, unlike the original complaint alleges for the first time that Gallo is seeking to recover damages on behalf of itself and its affiliated companies, including Gallo Glass and that the damages Gallo suffered were the result of prices charged by Defendants *under the agreement*. Defendants allege that, as a result of these changes in the pleading, the forum selection clause in the Agreement comes into play and Defendants, who were prevented from asserting the forum selection clause as a defense because Gallo was not a signatory to the Agreement, may do so now. Defendants contend their right to assert the forum selection

18

1    clause is not waived because the defense was not previously available to them.  The court

2    disagrees.

3         First, the nature of the case has not changed.  It has been apparent from the outset that

4    Gallo was suing the EnCana defendants for losses it suffered as a result of gas it purchased

5    through the purchase agreement with WD.  Defendant's contention that Gallo's amendments

6    in the FAC somehow changed the nature of the suit is completely untenable.  The suit was at

7    its inception, and continues to be, essentially an antitrust suit.  Although there is a passing

8    mention of the Agreement in the FAC, the FAC references the Agreement only tangentially

9    and bases none of its allegations on the Agreement's provisions.  In the FAC, the bad acts

10   alleged against Defendants, including collusive price setting, sham trades and submitting false

11   information to trade journals, are exactly the same as the unlawful conduct alleged in the

12   original complaint.

13        As previously stated, whether a forum selection clause is applicable depends on

14   whether the court must resort to the terms of the agreement to resolve the claims.  <u>See</u>

15   <u>Manetti-Farrow, Inc.</u>, 858 F.2d at 514.  Defendants rely on <u>Simula, Inc. v. Autoliv, Inc.</u>, 175

16   F.3d 716 (9th Cir. 1999), for the proposition that any connection between an agreement and

17   the claims between litigating parties will be sufficient to make a forum selection clause in the

18   agreement enforceable.  Defendants' reliance is misplaced.  In <u>Simula</u>, a dispute arose when

19   the inventor of a side-airbag collision protection system entered into a development and

20   production agreement with a manufacturer.  The agreement included provisions for joint

21   development and cooperation, licensing and supply of production elements.  <u>Id</u>. at 718.  In the

22   suit, the plaintiff-inventor alleged the manufacturer misrepresented safety data concerning its

23   product, misappropriated trade secrets, violated the Sherman Antitrust Act and the Lanham

24   Act.  <u>Id</u>. at 719.  The defendant in <u>Simula</u> sought enforcement of the arbitration clause in the

25   agreement between the companies and the court found arbitration agreements enforceable for

26   the factual matters alleged merely "'touch matters' covered by the contract containing the

27

28                                             19

arbitration clause." Id. at 721.

The present case differs from Simula in that here, unlike the facts of Simula, the wrongs alleged have nothing at all to do with the agreement.  Defendants are not accused of disparaging Gallo's product or interfering with its sales or appropriating anything belonging to Gallo.  Rather, Defendants are alleged to have passed on to Gallo prices that were illegally inflated as a result of collusive and anti-competitive behavior that occurred entirely outside the scope of the simple gas supply Agreement.  The Agreement, in other words, does not touch on the factual allegations against Defendants, it merely identifies Defendants as the parties to be sued among all of the conspirators engaged in sham trades and other collusive behavior simply because Defendants, among all the possible conspirators, are the ones who sold natural gas to Gallo.  The court concludes that, given even the most expansive application of forum selection interpretations, the factual allegations in the FAC bear no significant relationship to the agreement between Gallo and Defendants containing the forum selection clause.

The waiver, which the court found applicable in its order of October 31, is even more applicable today.  Defendants claim they have not waived their rights under the forum selection clause because only in the FAC does Gallo make it explicit that Gallo is suing on behalf of itself and all its subsidiary companies that used natural gas purchased through the agreement.  The argument misses the point.

Defendants cite Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc., 217 F.R.D. 305, 307 (N.D.N.Y. 2003), and Daniel v. American Bd. Emergency Medicine, 988 F.Supp. 127, 259 (W.D.N.Y. 1996), among others, for the proposition a defense, including as here a forum selection clause, is not waived where it is not available at the time the complaint is answered or at the time of the defendant's first Rule 12 motion.  Daniel is characteristic of the cases cited.  In Daniel, the case, which started out as a suit by a single physician against the American Board of Emergency Medicine, became a suit by some 176 individuals against some 30 defendants and involving institutions in 34 states and the District of Columbia.  Id. at 148,

259.  In <u>Daniel</u>, the court recognized the addition of new parties may have changed the locus of significant events for the case and so held that the right to challenge venue was not waived because the shift in the locus of events was not evident until the additional parties were added. <u>Id.</u>

Such is not the case here.  In the present case, the FAC adds no new plaintiffs or defendants, it merely clarifies the scope of damages being claimed by the plaintiff for exactly the same acts that were alleged in the original complaint.  The argument that the losses suffered by Gallo, or any other Gallo entity, were the result of sales carried out under the Agreement was available to Defendants from the beginning.  Granted that Defendants might have been required to allege that Gallo was actually suing on behalf of itself and all other Gallo entities for gas purchased under the agreement, but that would only have been an allegation of what has been obvious from the beginning and explicit in the Agreement itself. Whether or not Defendants argument for invoking the forum selection is stronger in light of the FAC than it was in the original complaint is not the question; Defendants could have raised the issue in their first Rule 12 motion filed nearly two years ago.  The fact they did not waives their right to invoke the forum selection clause now.

Second, the existence of a forum selection clause is a "'significant factor' in the court's analysis" of proper forum, but it is by no means dispositive of the question.  <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-499 (9th Cir. 2000).  Pursuant to 28 U.S.C., section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' [Citation.]" <u>Stewart Organization, Inc. v. RICOH Corp.</u>, 487 U.S. 22, 29 (1988).  In this case, it would be unfair in the extreme to Gallo to now invoke the forum selection clause after so much of the parties' (not to mention the court's) time and effort has

21

been expended in discovery, the settlement of discovery disputes, and the resolution of pre-trial dispositive and non-dispositive motions.  As the court noted in its opinion of October 31, 2004, to allow dismissal of the case at this stage of the proceedings, after so much has been invested in the resolution of this case, would be an example of forum shopping at its most wasteful.


     THEREFORE, in consideration of the foregoing discussion it is hereby ORDERED that Defendants' motions to Dismiss under Rules 12(b)(6), or in the alternative summary judgment or summary adjudication are HEREBY DENIED.  Defendants motion to dismiss on the ground of improper venue pursuant to Rule 12(b)(3) is HEREBY DENIED.


IT IS SO ORDERED.

**Dated:     July 6, 2005**               **_____/s/ Anthony W. Ishii_____**
h2ehf                                             UNITED STATES DISTRICT JUDGE

22