1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| E. & J. GALLO WINERY, ) | CV F 03-5412   AWI LJO |
| ) | |
| **Plaintiff**, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER ON** |
| v. ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT AS** |
| ENCANA ENERGY SERVICES, INC., ) | **TO DEFENDANT'S EIGHTH,** |
| a Delaware corporation, formerly known ) | **NINTH AND TWENTY-** |
| as PANCANADIAN ENERGY ) | **SECOND ADDITIONAL** |
| SERVICES INC.; ENCANA ) | **(AFFIRMATIVE) DEFENSES** |
| CORPORATION, a Canadian ) | |
| corporation, formerly known as and ) | |
| successor to PANCANADIAN ) | |
| ENERGY CORPORATION, ) | |
| ) | **Document # 508** |
| **Defendant**s. ) | |
| _____ ) | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This is an action for damages and declaratory relief by plaintiff E. & J. Gallo Winery ("Gallo") against defendants EnCana Corp. ("EnCana"), a Canadian producer of natural gas, and WD Energy Services, Inc. ("WD") (formerly EnCana Energy Services, formerly Pan Canadian Energy Services, Inc.), a wholly-owned marketing subsidiary of EnCana Corp. (collectively, "Defendants").  Gallo filed and served the currently-operative First Amended Complaint ("FAC") on January 24, 2005.  Defendants filed their answer on July 21, 2005.  In the instant motion, Gallo seeks summary judgment as to three separate and additional (or affirmative) defenses asserted by Defendants in their answer.  For the reasons that follow, Gallo's motion for summary judgment will be denied in part as moot and granted in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background of this case has been reviewed in numerous prior documents and need not be repeated in its entirety here.  In general, Gallo alleges that it was harmed by Defendants' anti-competitive behavior.  As summarized in the FAC and pertinent to the instant motion, Gallo alleges:

> Defendants and the unnamed co-conspirators also agreed to do "wash" transactions under which they simultaneously bought and sold from each other the same natural gas and natural gas "basis" swaps and other commodities <u>at the same price on the same day</u>.  The "wash trades" created the false appearance of demand for and shortage of supply of natural gas and natural gas transportation into California.  The " wash trades" also served as a method of communicating collusive price information and collusively manipulating the supposedly independent third party published indexes of prices used to determine the settlement amount of natural gas contracts and natural gas derivatives, including "basis" swaps.

FAC at ¶ 21.

On February 9, 2005, Defendants moved to dismiss the FAC on the ground the claims in the FAC were precluded under the doctrine of *res judicata* by prior proceedings in state superior court in the case of <u>Dry Creek Corp. V. El Paso Natural Gas Co.</u>, Case No. 2001 - 033722 (the "El Paso Action").  Defendants also sought to dismiss the FAC for improper venue.  Both motions were denied by the court's order of July 6, 2005 (the "July 6 Order").  Defendants' Answer to the FAC was filed on July 21, 2005.  On July 25, 2005, Defendants moved for summary judgment on the ground Plaintiff's claims are barred by the doctrines of federal preemption and filed rate doctrine.  On the same day, Gallo moved for summary judgment on the issue of principal/agent liability and filed the instant motion for summary judgment on Defendants' affirmative defenses.

The court denied Defendants' motion for summary judgment on the grounds of federal preemption and filed rate doctrine on September 30, 2005 (the "Sept. 30 Order").  On October 17, 2005, the court granted Defendants' request for certificate of interlocutory appeal as to the court's Sept. 30 Order.  The appeal was filed with the Ninth Circuit Court of Appeals on December 12, 2005.  Further proceedings in this case were stayed pending

2

1   outcome of the appeal.  The appellate court filed its decision affirming this court's denial of

2   Defendants' motion for summary judgment on filed rate and federal preemption on

3   September 19, 2007.  The stay that had been imposed on further proceedings pending appeal

4   was lifted on November 21, 2007.  The appellate court's mandate was filed on April 14,

5   2008.

6                                          **LEGAL STANDARD**

7          Summary judgment is appropriate when it is demonstrated that there exists no

8   genuine issue as to any material fact, and that the moving party is entitled to judgment as a

9   matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

10  Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755

11  F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d

12  1310, 1313 (9th Cir. 1984).

13          Under summary judgment practice, the moving party always bears the initial
            responsibility of informing the district court of the basis for its motion, and
14          identifying those portions of "the pleadings, depositions, answers to
            interrogatories, and admissions on file, together with the affidavits, if any,"
15          which it believes demonstrate the absence of a genuine issue of material fact.

16  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary

17  judgment always has the initial responsibility of informing the court, the nature of the

18  responsibility varies "depending on whether the legal issues are ones on which the movant or

19  the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d

20  1118, 1132-1133 (D. Ariz. 2007).  When the moving party has the burden of proof at trial,

21  that party must carry its initial burden at summary judgment by presenting evidence

22  affirmatively showing, for all essential elements of its case, that no reasonable jury could find

23  for the non-moving party.  United States v. Four Parcels of Real Property, 941 F.2d 1428,

24  1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir.

25  1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y

26  Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving

27

28                                              3

1     for summary judgment bears the burden of proof on an issue, he cannot prevail unless the

2     evidence that he provides on that issue is conclusive.")

3         If the moving party meets its initial responsibility, the burden then shifts to the

4     opposing party to establish that a genuine issue as to any material fact actually does exist.

5     Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l

6     Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los

7     Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this

8     factual dispute, the opposing party may not rely upon the mere allegations or denials of its

9     pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

10     admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

11     Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474

12     F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in

13     contention is material, i.e., a fact that might affect the outcome of the suit under the

14     governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

15     Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute

16     is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

17     nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d

18     1433, 1436 (9th Cir. 1987).

19         In the endeavor to establish the existence of a factual dispute, the opposing party need

20     not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21     claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22     versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at

23     631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

24     proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

25     (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

26     Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

27

28                                         4

1    In resolving the summary judgment motion, the court examines the pleadings,

2 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3 any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06

4 (9th Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at

5 255, and all reasonable inferences that may be drawn from the facts placed before the court

6 must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United</u>

7 <u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of</u>

8 <u>Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the

9 air, and it is the opposing party's obligation to produce a factual predicate from which the

10 inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45

11 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

12                          **UNDISPUTED MATERIAL FACTS**

13    Gallo's instant motion for summary judgment pertains to three "Separate and

14 Additional Defense[s]" that were set forth in Defendants' answer to the FAC.  It is

15 undisputed that those Defenses are:

16    EIGHTH SEPARATE AND ADDITIONAL DEFENSE (Government Action)

17    Government action, including but not limited to regulation by the Federal
      Energy Regulatory Commission and/or the California Public Utilities
18    Commission, was responsible for and was the legal cause of any injury
      claimed by Gallo.

19
      NINTH SEPARATE AND ADDITIONAL DEFENSE (State Action Doctrine)
20
      To the extent any of the activities of the WD Defendants were approved or
21    encouraged by the state or federal government the causes of action set forth in
      the Complaint are barred by the State Action Doctrine.
22
      TWENTY-SECOND SEPARATE AND ADDITIONAL DEFENSE
23
                          (*Res Judicata*/Collateral Estoppel)
24
      Gallo's claims are barred, in whole or in part, by the doctrines of *res judicata*
25    and/or collateral estoppel.

26
      It is undisputed that Gallo propounded interrogatories to Defendants with regard to
27

28                                          5

1    Defendants' Eighth and Ninth "Separate and Additional Defenses," requesting  statements of

2    facts that Defendants contend support the eighth and ninth separate and additional defenses,

3    respectively.  Companion requests for production of documents were also served on

4    Defendants.

5         Gallo undisputed material fact # 9 reproduces Defendants' response to Gallo's

6    interrogatory regarding Defendants' eighth separate and additional defense.  Defendants do

7    not dispute that Gallo faithfully reproduced their response to Gallo's interrogatory, but

8    contend they subsequently supplemented their response.  Defendants also point out that their

9    response to Gallo's interrogatory  was subject to facts known at the time.  Generally,

10   Defendants' reply to Gallo's interrogatory as to Defendants' eighth separate and additional

11   defense points to the existence of extrinsic factors such as, supply constraints, unseasonably

12   warm weather causing a spike in demand, insufficient infrastructure, declines in hydropower

13   generation and the like that were the cause of the increased priced in natural gas that Gallo

14   contends was the source of its damages.  Defendants allege that since they answered Gallo's

15   interrogatory, other facts have come to light that also point to additional extrinsic factors that

16   caused the rise of natural gas prices during the time period in question.

17        Similarly, Gallo reproduced Defendants response to Gallo's interrogatory requesting

18   all facts supporting Defendants' separate and additional defense number 9, which alleges

19   "State Action."  Defendants response is reproduced at Gallo's undisputed material fact # 10.

20   In summary, Defendants allege in their response to Gallo's interrogatory as to state action

21   that the increases in prices in natural gas during the time in question include extrinsic factors

22   including a "flawed energy market design," pipeline capacity constraints, and weather

23   extremes causing increased demand.  Defendants contend that their response to Gallo's

24   interrogatory presented evidence that "derivative transactions were specifically approved or

25   encouraged by the state or federal government."  Doc. 3 654 at 7-8.  Defendants'

26   supplemental response to Gallo's Interrogatory # 14 is reproduced at Gallo's undisputed

27

28                                              6

1    material fact # 21.  For the most part, Defendants' supplemental response reiterates most of

2    the same allegations expressed in the first response.

3                                             **DISCUSSION**

4    **I. Defendants' Eighth and Ninth Separate and Additional Defenses**

5           Tellingly, although Defendants did not object to Gallo's third and fourth undisputed

6    material facts which set forth Defendants' eighth and ninth separate and additional defenses,

7    Defendants did aver that Gallo bears the ultimate burden of persuasion on the issues of

8    Government Action and State Action Doctrine at trial.  Defendants argue that legal causation

9    is an element of Gallo's claims and that Gallo will have the ultimate burden of persuasion as

10   to causation, including the burden to show that the rise in prices Gallo claims was due to anti-

11   competitive activity was not actually caused by extrinsic factors.  Defendants also point out

12   that they stated in their answer that by alleging the defenses of Government Action and State

13   Action Doctrine, they were not "in any way agreeing or conceding that they have the burden

14   of proof or the burden of persuasion on any of these issues."  Doc. # 654 at 2.

15          The default rule as to the burden of proof is that "plaintiffs bear the burden of

16   persuasion regarding the essential aspects of their claims."  Shaffer v. Weast, 546 U.S. 49, 57

17   (2005).  However, "the burden of persuasion as to certain elements of a plaintiff's claim may

18   be shifted to defendants, when such elements can fairly be characterized as affirmative

19   defenses or exemptions."  Id.  Thus, Defendants' contention that Gallo will bear the burden

20   of persuasion as to the issue addressed by Defendants' eighth and ninth separate and

21   additional defenses directly undercuts the proposition that Defendants' eighth and ninth

22   "separate and additional defenses" are, in fact, affirmative defenses.

23          How Defendants' eighth and ninth "separate and additional defenses" are

24   characterized depends on the intended effect of the alleged defenses.  "A defense which

25   demonstrates that plaintiff has not met its burden of proof [as to an element plaintiff is

26   required to prove] is not an affirmative defense."  Zivkovic v. S. California Edison Co., 302

27

28                                                 7

1     F.3d 1080, 1088 (9th Cir. 2002).  Such a defense is merely rebuttal against the evidence

2     presented by the plaintiff.  On the other hand, "[a]n affirmative defense, under the meaning of

3     Fed.R.Civ.Proc. 8(c), is a defense that does not negate the elements of the plaintiff's claim,

4     but instead precludes liability even if all of the elements of the plaintiff's claim are proven."

5     Roberge v. Hannah Marine Corp., 124 F.3d 199, 1997 WL 468330 (6th Cir. 1997) at *3.

6            Defendants contend, and the court agrees, that causation is an element of Gallo's

7     claims for relief.  Essentially, Defendant's eighth and ninth "separate and additional

8     defenses" are intended to rebut Gallo's claim that Defendants' anti-competitive trading

9     behavior was the legal and proximate cause of the harm Gallo claims it suffered.  Defendants

10    argue that factors extrinsic to Defendants' conduct caused the harm, not their "wash" trades

11    and other anti-competitive acts.  Thus, leaving aside the question of whether the term

12    "separate and additional defenses" is synonymous with the term "affirmative defense," the

13    court finds Defendants' eighth and ninth "separate and additional defenses" are not

14    affirmative defenses.

15           Because Defendants' eighth and ninth "separate and additional defenses" are not

16    affirmative defenses, they need not be pled in the answer.  Zivkovic, 302 F.3d at 1088.  There

17    is no waiver if the defenses are not pled in the answer.  Id.  From this it follows that

18    Defendants' "separate and additional defenses" are not properly the subject of a motion for

19    summary judgment.  Gallo has the ultimate burden to show that the anti- competitive trading

20    behavior Defendants are alleged to have committed was the cause of Gallo's harm by a

21    preponderance of the evidence.  Defendants *may* show that Gallo cannot meet this burden

22    because other factors extrinsic to Defendants' behavior caused the harm.  But since

23    Defendants have no burden of initial production or ultimate persuasion, the court cannot find

24    as a matter of law that Defendants' arguments and evidence will, or will not, be sufficient to

25    negate the element of causation that Gallo must prove.  Such determination is for the trier of

26    fact, not the court.

27

28                                                              8

1    The court will strike Defendants' eighth and ninth "separate and additional defenses"

2  and will deny Gallo's motion for summary judgment as moot.

3    As something of an aside, the court notes that Defendants, in their arguments

4  regarding the sufficiency of their ninth separate and additional defense (State Action),

5  contend that some or all of the activities Gallo alleges harmed it, such as "basis swaps" and

6  "wash" transactions and other derivative transactions, are legitimate transactions under the

7  rules of the SEC and the FERC.  The court will make no ruling on the question of the legality

8  of the allegedly anti-competitive transactions because the question is not directly before the

9  court in the instant motion.  The court notes, however, that the Ninth Circuit Court of

10  Appeals, in its decision resolving the interlocutory appeal of this court's denial of

11  Defendants' motion for summary judgment on the ground of filed rate doctrine and

12  preemption, held that Gallo's claims are restricted to damages arising from transactions lying

13  outside FERC's jurisdiction.  E. & J. Gallo Winery v. EnCana Corp., 503 F.3d 1027, 1045

14  (9th Cir. 2007).   Thus the issue, so far as the establishment of Gallo's damages is concerned,

15  is not whether Defendants' transactions were lawful, but whether they were jurisdictional.

16  What, precisely, is encompassed by the term "jurisdictional" is not presently before the court,

17  but will very likely be the subject of later consideration.

18                    **B.  *Res Judicata and/or Collateral Estoppel***

19    In support of its motion for summary judgment on Defendants' twenty-second

20  "separate and additional" defense, Gallo points to the court's Memorandum Opinion and

21  Order Denying Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

22  or Adjudication.  Doc. # 375, filed July 6, 2005 (the "July 6 Order").  In particular, Gallo

23  quotes the following portion of the July 6 Order:

24          Defendants have failed to demonstrate they were in privity with the defendants
           in the El Paso Action.  Application of the doctrine of *res judicata* is therefore
25          not warranted in the present case.  To the extent Defendants might invoke the
           sister doctrine of collateral estoppel, that doctrine is also not warranted
26          because of the non-identity of the issues implicated in this action and in the El
           Paso action.  Defendants have failed to point to a single issue or issues that

27

28                                               9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

were necessarily decided in the El Paso action that are at play in the instant case.

July 6 Order, Doc. # 375 at 17:11-16.  Gallo contends that since the court determined Defendants' defense of *res judicata*/collateral estoppel was unsupported on the merits of Defendants' claim, the court's decision is law of the case and precludes application of the affirmative defense.

At the outset, the court notes that Defendants' twenty-second  "separate and additional" defense can fairly be described an affirmative defense as defined in Roberge, and the burden of persuasion at trial therefore falls on Defendants.  Shaffer, 546 U.S. 49, 57 (2005).  As moving party, Gallo does not have the ultimate burden of persuasion at trial, but does have "both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).   In order to carry its initial burden of production, Gallo "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

Law of the case doctrine does not settle the issue of whether summary judgment on Defendants' affirmative defense is appropriate.  Generally, law of the case doctrine provides that "a court should not reopen issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997).  The doctrine is, however, merely an expression of usual court practice and not a limit on the power of courts.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988).

The court's July 6 Order addressed Defendants motion to apply *res judicata*/collateral estoppel *defensively* in a motion to dismiss Gallo's claims.  What the court decided was that Gallo's claims against Defendants in this case were *not* precluded by the Superior Court's judgment in the El Paso Action, which was a 2002 case involving Coral Energy, El Paso Natural Gas Pipeline Co. and other natural gas pipeline companies not including, so far as the

10

1    court can discern, either of the Defendants in this case.  The court's conclusion in its July 6

2    Order was based on the claims set forth in Gallo's First Amended Complaint and on

3    judicially noticed portions of the record of the Superior Court in the El Paso Action.

4          What the court was not asked to decide in the July 6 Order was whether Defendants

5    were precluded on any legal theory from asserting the defenses of *res judicata* or collateral

6    estoppel at some later point in these proceedings.  The court concludes that the July 6 Order,

7    establishing the defensive non-applicability of *res judicata* or collateral estoppel on the

8    record that was before it at the time the July 6 Order was issued, addressed a different issue

9    than is presented by Gallo's instant motion to preclude Defendants' use of *res*

10    *judicata*/collateral estoppel as a defensive theory.

11          Gallo's basic contention with respect to Defendants' twenty-second separate and

12    additional defense is that the defense remains as unsupported on the record as it currently

13    exists after discovery as it was at the time the July 6 Order issued.  Therefore, Gallo reasons,

14    the doctrine of law of the case precludes Defendants' assertion of the defense of *res*

15    *judicata*/collateral estoppel now or during trial.  Because the court has not previously decided

16    whether Defendants may assert the affirmative defense of *res judicata*/collateral estoppel on

17    the record as it currently exists, Gallo's reliance on law of the case doctrine is misplaced.

18    The court instead construes Gallo's reference to the July 6 Order, and its claim that no new

19    facts have been illuminated by discovery that would tend to alter the court July 6 Order, as

20    Gallo's offer of proof to satisfy its initial burden of production and persuasion as the moving

21    party in the motion for summary judgment.  The court's July 6 Order effectively negated the

22    element of commonality of causes of action that is required for application of both *res*

23    *judicata* and collateral estoppel.  Based on that finding and on Gallo's allegation that there

24    has been no relevant factual change since discovery, the court finds that Gallo's offer of proof

25    is sufficient to carry their initial burden to negate at least one element of the affirmative

26    defense of *res judicata*/collateral estoppel.

27

28                                        11

1    Because the court finds Gallo has carried its initial burdens of production and

2    persuasion as to at least one necessary element of Defendants' affirmative defense, the court

3    next looks to Defendants to see if they have adduced facts sufficient to show there exists an

4    issue of material fact with respect to their affirmative defense of *res judicata*/collateral

5    estoppel.

6    Defendants point to what they term is additional information not available at the time

7    of Defendants prior motion to dismiss.  Defendants allege there is additional information that

8    indicates that "Gallo is, in fact, seeking the same damages here that it sought in the El Paso

9    [A]ction.  Double recovery is a major concern in this case because Gallo has already received

10   a substantial monetary Settlement ($7 million) in the El Paso [A]ction for the same exact

11   damages that it seeks here, the amount it paid for allegedly inflated gas prices."  Doc. # 614

12   at 8:15-17.

13   The additional facts alleged by Defendants undercut their argument.  Defendants

14   claim that Gallo's 30(b)(6) witness, Bruce Hungate, testified that "Gallo's damage analysis in

15   the El Paso Action calculated Gallo's total damages in the range of $20 million to $30

16   million," the same amount Gallo identifies as damages in this case.  Doc. # 614 at 18:18-20.

17   The facts adduced by Defendants fail to support any issue of material fact as to the

18   applicability of *res judicata* or collateral estoppel for two reasons.  First, the additional facts

19   alleged by Defendants fails to establish any issue of material fact as to the issue of identity of

20   the causes of action in the El Paso action and the present action.  As the court observed in the

21   July 6 Order:

22   Defendants' allegations confuse the category of conduct with the
     specific delict or wrong done to the plaintiff.  Defendants refer consistently to
23   Gallo's allegations of concerted action, collusion and conspiracy in this case
     and of allegation of the same behaviors in the El Paso action.  The implication
24   is that the behaviors in both cases constitute identical wrongs because they are
     both instances of collusion.  The flaw in Defendants' logic is fairly obvious.
25   Defendants' argument substitutes the label for the behavior for the operative
     facts that constitute the behavior and implies that the facts are the same
26   because the labels are the same.  The court disagrees.  There are innumerable
     ways to collude and innumerable sets of acts that parties can conspire to carry

27

28                                             12

out that produce the end result of manipulation of the marketplace.

Identity of cause of action implies not only identity of conspiracy, but also identity of the operative facts in support of that conspiracy. <u>See</u> <u>Nash County Bd. Of Education v. Biltmore Company</u>, 640 F.2d 484, 488 (4th Cir. 1981) (identity of cause of action found where specific wrongful act, conspiracy and operative facts supporting conspiracy are present). What prevents the court from finding the causes of action were identical is the non-identity of the wrongs alleged and the specific operative facts in the two cases. In the El Paso action, the specific wrongs alleged against the El Paso defendants were the physical restriction of flow to create an artificial shortage of natural gas during periods of peak use, bid rigging, and negotiating secret discounts. In the present action, the wrongs alleged are the carrying out of sham trades to produce the false appearance of sale of spare pipeline capacity, the submission of information to trade publications falsely representing high demand for pipeline capacity, and collusive price information sharing. The physical situs of the wrong alleged in the El Paso action was at Topock on the California-Arizona border. In the present action the wrong is alleged to have occurred at PG&E Citygate on the California-Oregon border. The conspiracy that was alleged in the El Paso action was the conspiracy to share pricing information where the pricing was known to be the result of market manipulation. In the instant action the conspiracy alleged was the conspiracy to engage in sham trades. Beyond question, the instant case involves operative facts and alleged wrongs that are distinct and separate from the operative facts and alleged wrongs of the El Paso action.

July 6 Order, Doc.# 375 at 13:16 - 14:18

Because the causes of action are not identical, and because the judgment in the El Paso Action compensated Gallo for only a portion of the total damages it claimed, there is nothing that bars Gallo from seeking relief from other parties who may have engaged in the same or similar wrongs. As the court put it in the July 6 Order:

In the El Paso action, the settlement agreement, by its own terms extended only to the named defendants and specifically provided the agreement would not operate as retraxit as to any other party or to claims not specifically settled. [¶] Further, it must be remembered that the settlement agreement [in the El Paso Action] operated as a judgment on the merits in favor of Gallo. Where a plaintiff obtains a judgment against a defendant, the doctrine of *res judicata* applies where the action served to enforce one of two or more alternative and mutually exclusive remedies. This rule prevents multiple recoveries by a plaintiff. <u>Busick v. Workmen's Compensation Appeals Bd.</u>, 7 Cal.3d 967, 973 (1972). Where double recovery for the same wrong is not an issue, and where joinder of the other defendant is not mandatory, there is no doctrine preventing the plaintiff from suing other defendants who were not parties in the first action for the commission of the same or similar wrongs. Here, there is no indication double recovery for the same wrongs is a consideration. As previously discussed, this case implicates different claims supported by different operative facts from the El Paso Action.

13

1    July 6 Order, Doc. # 375 at 16:17 - 18:5.

2            Fundamentally, what Defendants claim is that Gallo has already recovered some

3    portion of the damages it claims were the result of improper market manipulation in a prior

4    action.  That may be the case, but it does not state a basis for preclusion of claims by Gallo

5    under either *res judicata* or collateral estoppel.  At most, Defendants' claim that Gallo has

6    already been compensated some money for harms arising from allegedly similar misconduct

7    by others is merely a basis for argument as to the amount Gallo may claim as damages in this

8    action.  Defendants are free to argue that some portion of the damages alleged against them

9    are the responsibility of other actors and have been compensated.  However, the facts alleged

10   by Defendants fail to support the contention that Gallo's claims are barred in whole or in part

11   by *res judicata* or collateral estoppel.

12

13           In accordance with the foregoing discussion, it is hereby ORDERED that:

14   1.       Defendants' eighth and ninth separate and additional defenses are hereby STRICKEN

15            from the FAC.

16   2.       Gallo's motion for summary judgment as to Defendants' eighth and ninth separate

17            and additional defenses is hereby DENIED as moot.

18   3.       Gallo's motion for summary judgment as to Defendants' twenty-second separate and

19            additional defense is hereby GRANTED.

20

21   IT IS SO ORDERED.

22   **Dated:    June 17, 2008**                    **/s/ Anthony W. Ishii**
                                               UNITED STATES CHIEF DISTRICT JUDGE
23

24

25

26

27

28                                             14