1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   E & J GALLO WINERY,                          CASE NO. CV F 03-5412 LJO DLB

12                   Plaintiff,                   **ORDER ON DEFENDANTS' MOTIONS IN
                                                  LIMINE**
13         vs.                                    (Docs. 749, 751, 756, 761, 763, 768, 771, 774,
                                                  777, 781, 782, 786, 794, 799, 802, 803, 806, 809.)
14   ENCANA ENERGY SERVICES,
     INC., et al.,
15
                     Defendants.
16   _____/

17         Defendants Encana Corporation ("Encana") and WD Energy Services Inc. ("WD Energy") filed

18   18 motions in limine.  Plaintiff E & J Gallo Winery ("Gallo") opposes Encana and WD Energy's

19   (collectively "defendants'") motions in limine.  The parties' moving and opposition papers are clear.

20   This Court needs no oral argument on defendants' motions in limine.  This Court issues the following

21   rulings on defendants' motions in limine and VACATES the August 31, 2009 hearing on defendants'

22   motions in limine.

23   **DEFENDANTS' MIL[1] NO. 1 TO EXCLUDE DAMAGES PREEMPTED BY FILED RATE**

24   **DOCTRINE**

25         Defendants  seek to exclude damages preempted by the Filed Rate Doctrine in light of the Ninth

26   Circuit Court of Appeals' decision in *E & J Gallo Winery v. Encana Corp.*, 503 F.3d 1027 (9th Cir.

27   _____

28         [1]         As used in headings "MIL" refers to motion in limine.

                                                  1

1  2007).  Defendants fault Gallo's inability to proffer a damages theory or model that complies with the

2  Filed Rate Doctrine.

3       The Ninth Circuit has limited Gallo's claims based on non-Federal Energy Regulatory

4  Commission ("FERC") authorized rates.  The Ninth Circuit noted that the indices generally reflect

5  FERC-authorized rates, except to the extent that index pricing inputs were misreported or wholly

6  fictitious.  Non-FERC authorized rates also include direct consumer wholesale transactions and first

7  sales at the wellhead or via Mexican or Canadian imports.  Moreover, Gallo may establish damages from

8  paying retail rates pegged to indices it alleges were artificially inflated by illegal practices.

9       In this motion in limine, defendants focus on the opinions of Gallo expert economists John

10  Landon, Ph.D. ("Dr. Landon) and Michael Quinn, Ph.D. ("Dr. Quinn").  Defendants offer generalized

11  arguments that their opinions and models violate the Filed Rate Doctrine without identifying specific

12  violation or error.  Defendants' arguments address the weight rather than admissibility of Drs. Landon

13  and Quinn's opinions.  Nonetheless, Gallo must point to specific factors to demonstrate a rise in the

14  Natural Gas Intelligence index in connection with misreported rates or fictitious transactions.  Gallo may

15  also rely on wholesale market or first wellhead transactions and Canadian imports.

16       Defendants appear to seek no specifically defined order and attempt to extrapolate a blanket order

17  that Gallo cannot recover damages preempted by the Filed Rate Doctrine.  Defendants offer no insight

18  to fashion an order subject to this motion, and this Court will not issue such a blanket order.

19                                    ***ORDER***

20       This Court DENIES defendants' motion in limine.  The Filed Rate Doctrine will need to be

21  addressed as evidence is presented, based on timely, non-argumentative and appropriate objections.  The

22  parties and this Court are keenly aware of the Ninth Circuit decision, which will serve as a backdrop for

23  questioning.

24  **DEFENDANTS' MIL NO. 2 TO EXCLUDE DEFENDANTS AND OTHERS' SETTLEMENTS**

25  **WITH THE COMMODITY FUTURES TRADING COMMISSION**

26       Defendants seek to exclude settlements of WD Energy, other natural gas companies and

27  individual traders with the Commodity Futures Trading Commission ("CFTC").

28       F.R.Evid. 408(a) applies to the settlements and related documents.  Exhibit A to Gallo's

2

1   opposition states that the order is "in full and final settlement."  Balancing under F.R.Evid. 403, in light

2   of F.R.Evid. 408, further supports exclusion of the CFTC settlements and related documents.  Prior

3   judicial notice of the settlements does not address their admission at trial.  Experts could not reasonably

4   have relied upon the CFTC settlements to form opinions to warrant admission of the CFTC settlement

5   and related documents.

6                                              ***ORDER***

7          This Court GRANTS the motion in limine and EXCLUDES the CFTC settlements.

8   **DEFENDANTS' MIL NO. 3 TO EXCLUDE THIRD-PARTY CRIMINAL PROCEEDINGS**

9          Defendants seek to exclude evidence of criminal proceedings against natural gas traders who

10  were not employed by defendants.

11         A statement is non-hearsay if "offered against a party and is . . . by a coconspirator of a party

12  during the course and in furtherance of the conspiracy."  F.R.Evid. 801(d)(2)(E).  Gallo correctly notes

13  that it must prove "an industry-wide conspiracy."  Moreover, Gallo must prove defendants' connection

14  to a conspiracy.  A definitive ruling is premature until an there is an opportunity to lay F.R.Evid.

15  801(d)(2)(E) foundation.  Although defendants need not be referred to in the third-party criminal actions

16  to allow admission, there must be a direct or circumstantial connection with defendants to satisfy

17  F.R.Evid. 801(d)(2)(E).

18                                             ***ORDER***

19         This Court RULES that if proffered evidence satisfies F.R.Evid. 801(d)(2)(E), and in light of

20  Gallo's conspiracy allegations, the motion is DENIED.  If however proffered evidence fails to satisfy

21  F.R.Evid. 801(d)(2)(E), the motion is GRANTED.  In short, Gallo will need to lay a foundation at the

22  outset of particular witness testimony that a conspiracy existed and involved the declarant and

23  defendants and was made "during and in furtherance of the conspiracy."

24  **DEFENDANTS' MIL NO. 4 TO EXCLUDE PREJUDGMENT INTEREST**

25         Defendants seek to exclude evidence of prejudgment interest on Gallo's claims in that

26  prejudgment interest is reserved for this Court.

27         Gallo rests its prejudgment interest remedy only on its state law unjust enrichment claim for

28  restitution.  Prejudgment interest on such limited claim is available.

***ORDER***

This Court DENIES the motion in limine and LIMITS Gallo's prejudgment interest remedy to its unjust enrichment claim for restitution.

**DEFENDANTS' MIL NO. 5 TO EXCLUDE/BIFURCATE ISSUES OF DEFENDANTS' ALTER EGO AND AGENCY**

Defendants seek to exclude evidence that Encana engaged in wrongdoing, as well as evidence of Encana's financial information. Defendants further seek to exclude, until a second trial phase after findings of liability and damages, evidence that WD Energy is an agent or alter ego of Encana. In short, defendants seek to "preclude any evidence relating to vicarious liability under any theory, whether agency or alter ego."

A fellow district court has observed:

> The piecemeal trial of separate issues in a single lawsuit is not to be the usual course. . . . "[C]ourts should not order separate trials unless such a disposition is clearly necessary." . . .The decision to bifurcate pursuant to Rule 42(b) is one made on a case by case basis and committed to the discretion of the district court. . . . In order for a court to grant bifurcation, the party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case. . . . Thus, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.

*Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) (citations omitted).

Defendants have failed to demonstrate increased efficiency from bifurcation of the agency issue. Gallo points to meaningful overlap in agency and liability issues. Gallo commits to try its case-in-chief in no more than 12 trial days.

The agency issue will require factual findings by the jury. Bifurcation will not promote time savings if there are liability and damages findings. Encana's potential vicarious liability outweighs its relevance, prejudice, confusion and time concerns.

Evidence of the alter ego legal issue should be excluded until a bifurcated phase after findings of liability and damages.

***ORDER***

Based on the parties' stipulation, this Court EXCLUDES alter ego evidence until a bifurcated

4

1    phase after findings of liability and damages and DENIES bifurcation of the agency issue.

2    **DEFENDANTS' MIL NO. 6 TO EXCLUDE TAPE RECORDINGS AND TRANSCRIPTS OF**

3    **SEVEN EMPLOYEE CONVERSATIONS**

4    　　　Defendants seek to exclude tape recordings and transcripts of seven WD Energy employee

5    telephone conversations in that the conversations are irrelevant, unfairly prejudicial and hearsay.

6    　　　Tape No. 1 with former WD Energy financials trader Sarah Allen ("Ms. Allen") offers nothing

7    relevant.  The tape includes a discussion about volatile markets and Ms. Allen's crude comment about

8    grandma freezing.

9    　　　Tape No. 2 addresses a California trade with an unknown caller and which was advantageous

10   to WD Energy.  The tape lacks relevancy to Gallo's claims.

11   　　　Tape No. 3 involves a conversation between former WD Energy employees Jay Cattermole ("Mr.

12   Cattermole") and Thomas Gary (" Mr. Gary") and addresses increased California natural gas prices.  The

13   tape is relevant to Gallo's claims.

14   　　　Tape No. 4 involves a conversation between former WD Energy employees Mr. Cattermole and

15   Beth Dahnke ("Ms. Dahnke").  Mr. Cattermole's conversations disparage Gallo but do not address

16   alleged conspiracy.  This renders the tape irrelevant.

17   　　　Tape No. 5 involves former WD Energy employee Greg Anderssen (" Mr. Anderssen") and

18   "Greg" of apparently El Paso.  At a minimum, the tape addresses market manipulation relevant to

19   Gallo's claims.

20   　　　Tape No. 6 involves Mr. Anderssen and Greg and appears to depict a wash trade relevant to

21   Gallo's claims.

22   　　　Tape No. 7 involves former WD Energy employee Mr. Gary and appears to include his admission

23   of false price reporting to render the tape relevant to Gallo's claims.

24   　　　There appear to be no genuine authentication issues since defendants prepared and produced the

25   tape recordings.  Unless there is fruitful meet and confer process, Gallo will need to authenticate tape

26   recordings for their admission.

27   　　　Gallo does not seek to admit the transcripts, which can be used to assist the jury during play of

28   the tape recordings.  Transcript inaccuracies can be worked out by the parties, or defendants can submit

1    their own version.  The jury can be instructed that the transcripts are merely an aid.

2         As to portions of tape recordings played, no need appears to play the entire tape recordings.

3    Gallo may play its selected portions, and defendants may play additional relevant portions.

4                                             ***ORDER***

5         This Court:

6         1.    EXCLUDES the tapes and transcripts of Tape No. 1 – Sarah Allen, Tape No. 2 – Sarah

7               Allen, and Tape No. 4 – Jay Cattermole and Beth Dahnke;

8         2.    ADMITS the tape recordings of Tape No. 3 – Jay Cattermole and Tom Gary, Tape No.

9               5 – Rick Anderssen and Greg, Tape No. 6 – Rick Anderssen and Greg, and Tape No. 7

10              – Thomas Gary and Mark, if Gallo authenticates them;

11        3.    PERMITS transcripts of admitted taped recorded telephone conversations to assist the

12              jury only.  The transcripts will not be admitted;

13        4.    WILL INSTRUCT the jury that the tapes constitute the evidence, and the transcripts are

14              only an aid.  If there is a discrepancy between the tape and the transcript, what the jury

15              hears on the tape governs.  The tape recording is the evidence.  The transcripts are an aid;

16              and

17        5.    PERMITS defendants to play additional relevant portions of tape recordings and to

18              submit their transcripts.

19   **DEFENDANTS' MIL NO. 7 TO EXCLUDE FERC STAFF REPORT**

20        Defendants seek to exclude the March 2003 "Final Report on Price Manipulation in Western

21   Markets" ("staff report") prepared by FERC staff.

22        The staff report is hearsay, and Gallo fails to demonstrate a hearsay exception, especially since

23   FERC did not adopt the staff report.  Defendants raise legitimate hearsay-on-hearsay concerns and

24   dangers of unfair prejudice and confusion in the absence of the staff report's reference to defendants or

25   their employees.  Nonetheless, the parties' experts have relied on the staff report and addressed it in their

26   reports.  The staff report is the type of evidence on which natural gas experts rely.  The staff report has

27   probative value to support expert opinion to outweigh its prejudicial effect.  Although the staff report

28   should not be admitted, it may be referenced during expert testimony.

***ORDER***

This Court PRECLUDES admission of the staff report but PERMITS experts to reference the staff report to support their opinions.

**DEFENDANTS' MIL NO. 8 TO EXCLUDE ASSERTION OF FIFTH AMENDMENT PRIVILEGE**

Defendants seek to exclude evidence of and related inferences from five witnesses who asserted the Fifth Amendment privilege against self-incrimination.  Defendants further seek to preclude Gallo to present depositions or live testimony of a witness asserting the Fifth Amendment privilege.  If such evidence or inference is allowed, defendants request a jury instruction that a witness invoked the permissible Fifth Amendment privilege and/or that their law professor expert testify to explain and place in context assertion of the privilege.

Defendants point to no authority that this Court is bound by California Evidence Code section 913(a).  There is no federal counterpart.  Defendants' reliance on such state law is unavailing given that this is a federal question case with pendent state claims.

In the absence of a prohibition on an adverse inference from Fifth Amendment privilege invocation in a civil case, this Court must determine if independent evidence exists of the fact to which the party refuses to answer.  Gallo points to sufficient independent evidence as to central issues.  A blanket order proposed by defendants would be unworkable.

As to those areas where an adverse inference may be drawn, a jury instruction is appropriate.

As to Professor Joseph Duane ("Prof. Duane"), Gallo seeks to exclude his report and testimony with one of its motions in limine.  As discussed in connection with Gallo's motion in limine, Prof. Duane's testimony is inadmissible.

***ORDER***

This Court:

1.     DENIES the motion in limine;

2.     When an adverse inference from Fifth Amendment privilege invocation is permitted, WILL INSTRUCT the jury that the substantive testimony of the particular witness is unavailable to the parties because the witness has asserted his/her Fifth Amendment

7

1   privilege on advice of counsel, as he/she is permitted; and

2       3.    ORDERS the parties, no later than October 23, 2009, to file a joint jury instruction on

3   Fifth Amendment privilege invocation.

4   **DEFENDANTS' MIL NO. 9 TO EXCLUDE "WASH TRADES"**

5       Defendants seek to exclude evidence of "wash trades" on grounds that such transactions are

6   subject to FERC jurisdiction and beyond the scope of Gallo's claims.  In particular, defendants seek to

7   preclude Gallo's expert economist Dr. Landon to address wash trades in that Dr. Landon's definition

8   of wash trade exceeds the scope of wash trades recognized by the Ninth Circuit.

9       Defendants broadly claim that all wash transactions are subject to FERC's exclusive jurisdiction.

10   Defendants do not address the Ninth Circuit's observation that "[m]isreported rates and rates reported

11   for fictitious transactions are not FERC-approved rates, and  barring claims that such fictitious

12   transactions damaged purchasers in the natural gas market would not further the purpose of the filed rate

13   doctrine."  *Gallo*, 503 F.3d at 1045.  Moreover, defendants fail to reconcile the Ninth Circuit's

14   conclusion that "to the extent the indices are comprised of rates that are not FERC-authorized rates, the

15   Filed Rate Doctrine does not bar Gallo's claim that such rates are unfair and led to unfair retail rates paid

16   by Gallo."  *Gallo*, 503 F.3d at 1048.

17       This Court concludes that all wash trades are not subject to FERC's exclusive jurisdiction.

18   Defendants attempt to tie wash trades to a precise scope and a blanket order to exclude them.

19   Defendants offer nothing to craft an order to such precise scope.  Gallo raises valid points that wash

20   trades are shams which cannot be neatly defined.  Gallo is correct that defendants can attempt to validate

21   their transactions and that the jury will decide transactions' legitimacy.

22                     ***ORDER***

23       This Court DENIES the motion in limine.

24   **DEFENDANTS' MIL NO. 10 TO EXCLUDE TRANSACTIONS WITH RELIANT ENERGY,**

25   **FINANCIAL RESTATEMENT OF TRANSACTIONS, AND SEC INQUIRY AND ACTION**

26       Defendants seek to exclude several natural gas transactions ("Reliant transactions") with Reliant

27   Energy Services ("Reliant").  Defendants further seek to exclude financial restatements of the Reliant

28   transactions, a Securities and Exchange Commission ("SEC") inquiry into the Reliant transactions, and

1    an SEC consent decree issued to Reliant.

2         The Reliant transactions, related financial restatements and SEC action are collateral and remote

3    to Gallo's claims which are limited to trading at the PG&E Citygate, a point which Gallo does not

4    dispute.  The Reliant transactions are complex and would require significant time to address with no

5    meaningful probative value.  Gallo appears to seek to admit the Reliant transactions and related matters

6    to create an impression that WD Energy engages in bad acts or shady deals to demonstrate a proclivity

7    for such transgressions, including potential wrongdoing as to Gallo.  Gallo fails to justify admission of

8    the Reliant transactions, financial restatements of the Reliant transactions, or the SEC inquiry and

9    consent order.

10                                            ***ORDER***

11        This Court GRANTS the motion in limine and EXCLUDES evidence of the Reliant transactions

12   and related financial restatements and SEC action.

13   **DEFENDANTS' MIL NO. 11 TO EXCLUDE ALLEGED MISCONDUCT AS TO THE HENRY**

14   **HUB AND NEW YORK MERCANTILE EXCHANGE**

15        Defendants seek to exclude alleged misconduct regarding natural gas prices at Louisiana's Henry

16   Hub and the open public market New York Mercantile Exchange ("NYMEX").

17        Gallo offers no meaningful opposition to exclude alleged misconduct regarding Henry Hub and

18   NYMEX.  Evidence of such misconduct is irrelevant, remote and collateral.

19                                            ***ORDER***

20        This Court GRANTS the motion in limine and EXCLUDES misconduct regarding natural gas

21   prices at Henry Hub and NYMEX.

22   **DEFENDANTS' MIL NO. 12 TO EXCLUDE *STANISLAUS FOODS* ACTION AND EVIDENCE**

23        Defendants seek to exclude evidence, including depositions, from *Stanislaus Foods v. Encana*

24   *Energy Services, Inc.*, Case No. CV F 01-6149 AWI LJO ("*Stanislaus Foods* action") and other actions

25   involving defendants, except for impeachment.

26        F.R.Civ.P. 32(a)(8) permits a "deposition lawfully taken" to be "used in a later action involving

27   the same subject matter between the same parties, or their representatives or successors in interest, to

28   the same extent as if taken in the later action."  If F.R.Civ.P. 32(a)(8) requirements are met, there is no

                                                  9

1    preclusion to use *Stanislaus Foods* action depositions.  Nonetheless, the absence of such preclusion does

2    not permit admission of depositions in entirety.  Deposition excerpts must otherwise satisfy the Federal

3    Rules of Evidence.  Defendants are not entitled to F.R.Civ.P. 404(b) preclusion of the *Stanislaus Foods*

4    action evidence to the extent such evidence reveals the same bad acts at issue is this action.

5        On a further point, if defendants argue or suggest that they have been cooperative and

6    forthcoming in discovery and that Gallo should have more evidence of a conspiracy, defendants will

7    open the door to permit Gallo to introduce defendants' actions to conceal their conduct and forestall

8    legitimate discovery.

9                                  ***ORDER***

10       This Court DENIES the motion in limine to the extent that F.R.Civ.P. 32(a)(8) requirements are

11   satisfied.

12   **DEFENDANTS' MIL NO. 13 TO EXCLUDE "SEND MESSAGE" AND "PUNISH"**

13   **REFERENCES**

14       Defendants seek to exclude references and arguments that the jury should "send a message" to

15   defendants or that defendants deserve to be "punished" or that persons other than Gallo were harmed

16   by defendants' wrongs.

17       The parties' approach to this motion lacks value.  Defendants' motion is broad and vague and

18   lacks reference to specific evidence or argument.  Gallo exhausts a nine-page brief to say as much.

19       This Court expects all counsel to conduct themselves as ethical court officers and not engage in

20   chicanery.

21                                 ***ORDER***

22       This Court DENIES the motion in limine.

23   **DEFENDANTS' MIL NO. 14 TO EXCLUDE MICHELLE MARKEY'S CALIFORNIA SENATE**

24   **TESTIMONY**

25       Defendants seek to exclude the testimony of former Gas Daily employee Michelle Markey ("Ms.

26   Markey") before the California Senate Select Committee to Investigate Price Manipulation of the

27   Wholesale Energy Market.

28       The fact that Ms. Markey's testimony was considered on summary judgment does not render it

1   admissible at trial.  Ms. Markey's testimony approximates non-designated expert opinion that was not

2   subject to cross-examination.  Gallo fails to substantiate admission of Ms. Markey's testimony.

3                                                    ***ORDER***

4          This Court GRANTS the motion in limine and EXCLUDES Ms. Markey's testimony before the

5   California Senate committee.

6   **DEFENDANTS' MIL NO. 15 TO EXCLUDE RICHARD ANDERSSEN-MICHELLE**

7   **VALENCIA RELATIONSHIP**

8          Defendants seek to exclude evidence of the romantic relationship and marriage of former natural

9   gas trader Mr. Anderssen and Michelle Valencia ("Ms. Valencia"), a natural gas trader at Dynegy

10  Marketing & Trade.

11         Evidence of the relationship and marriage is irrelevant, unless Mr. Anderssen or Ms. Valencia

12  testify that they were not close.  Defendants fail to demonstrate that F.R.Civ.P. 403 precludes the

13  evidence.  Gallo's conclusory, non-specific points are unavailing.

14                                                   ***ORDER***

15         This Court GRANTS without prejudice the motion in limine in that if Mr. Anderssen or Ms.

16  Valencia testify to the absence of closeness of their relationship or are interrogated as to the other's

17  credibility, this Court will revisit admission of evidence of their relationship.

18  **DEFENDANTS' *DAUBERT* MIL NO. 1 TO EXCLUDE GALLO EXPERT ECONOMISTS DRS.**

19  **LANDON AND QUINN**

20         Defendants seek to exclude damages, liability and conspiracy opinions of Gallo's expert

21  economists Drs. Landon and Quinn on grounds of flaws in their methodology and lack of expertise on

22  topics.  This motion is an alternative to MIL No. 1 to exclude damages preempted by the Filed Rate

23  Doctrine.

24         Defendants' points regarding disaggregating damages and forecasting models address the weight

25  of Drs. Landon and Quinn's opinions rather than admissibility.  Defendants fail to demonstrate that Drs.

26  Landon and Quinn's methodologies and models are based on inadequate data and procedures.  As an

27  antitrust plaintiff, Gallo is granted latitude to project its alleged damages despite defendants' second

28  guessing and at times out-of-context points.

1    Defendants raise a valid point that Drs. Landon and Quinn are not in a position to opine as to

2  liability or that their work reinforced an assumption of conspiracy.

3                                              ***ORDER***

4    This Court DENIES the motion in limine except to EXCLUDE Drs. Landon and Quinn's

5  opinions on liability and reinforced assumption of conspiracy.

6  **DEFENDANTS' *DAUBERT* MIL NO. 2 TO EXCLUDE GALLO EXPERT ACCOUNTANT**

7  **EVERETT HARRY**

8    Defendants seek to exclude Gallo's accountant expert Everett Harry ("Mr. Harry") on grounds

9  that Mr. Harry's opinions are irrelevant and unreliable.

10    Defendants generalize Mr. Harry's accounting analysis to conclude there is a unity of interest

11  between defendants. Defendants fail to challenge the specifics of Mr. Harry's opinions raised by Gallo.

12  Gallo demonstrates that Mr. Harry used specific accounting and methods to reach his conclusions.

13  Defendants raise no meaningful challenges to Mr. Harry's qualifications. Mr. Harry's limited opinions

14  are relevant to the agency issue. Gallo's commits to keep his testimony brief. Mr. Harry's testimony

15  is limited to the "operational change" in transfer pricing in 2001 and percentages of Encana's natural

16  gas production handled by WD Energy and revenues generated by WD for 1999-2001.

17                                             ***ORDER***

18    This Court LIMITS Mr. Harry's opinions to:

19  1.    The "operational change" in 2001 in the transfer price between Encana and WD Energy

20         for gas from Canada transported through the PGT pipeline to California; and

21  2.    The percentages of Encana's equity natural gas production sold through WD Energy and

22         of Encana's consolidated revenues from WD Energy for 1999-2001.

23  **DEFENDANTS' DAUBERT MIL NO. 3 TO EXCLUDE GALLO TRADER EXPERT STEPHEN**

24  **TRAICOFF**

25    Defendants seek to exclude Gallo gas trader expert Stephen Traicoff ("Mr. Traicoff") on grounds

26  that Mr. Traicoff is unqualified and that his opinions are unsupported.

27    Defendants fail to demonstrate that Mr. Traicoff is unqualified to offer opinions on trader

28  conduct. Mr. Traicoff has more than 14 years commercial and trading experience regarding natural gas,

refined products, petrochemicals, feedstocks and electric power.  Mr. Traicoff is qualified despite that his experience may not match perfectly to that of the traders at issue in this action.  Mr. Traicoff has sufficient experience to opine on day-to-day natural gas trading.  Issues as to materials he reviewed address the weight rather than admissibility of his opinions on inappropriate trader conduct.

Defendants raise valid points as to Mr. Traicoff's opinions on causation.  In short, Mr. Traicoff opines that improper trader conduct caused an increase in California prices.  Although Mr. Traicoff is knowledgeable of trader conduct, there is a question whether he is qualified to make the leap that trader conduct increased natural gas prices.  An absence of objective sources to corroborate his opinion raises serious reliability questions.  Also, his lack of knowledge regarding methodology used by natural gas indices erodes reliability of his opinion.

### ORDER

This Court PERMITS Mr. Traicoff's opinions on trader conduct, including trader jargon, but EXCLUDES his opinions on the effect of trader conduct on the published indices for natural gas.

**DUTY OF COUNSEL**

Counsel are cautioned against filing motions for reconsideration without legal prerequisites firmly established.

Counsel are discouraged from filing motions "for clarification" when such motions are nothing more than a statement of disagreement with the Court's ruling and/or an attempt to modify the ruling. Being surprised at the Court's ruling, no matter where the I.Q. chart's result lands, is not a basis for such a motion.

During trial, the parties' counsel shall meet with the Court each morning prior to jury arrival to address evidentiary issues and disputes.  The jury will **NOT** be kept waiting.  The Court will rule on matters to the extent possible prior to  commencement of trial each day out of the jury's presence.  If such ruling depends on receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence.  If evidentiary problems are anticipated, the parties' counsel are required to notify the Court immediately that a hearing outside the jury's presence will be required, but should not expect such hearing while the jury waits in the jury room.  Such hearings will take place before the jury arrives or after they depart.

1    Finally, should objections be made in front of the jury on a purported violation of a motion in

2    limine ruling, counsel are expected to object stating the **LEGAL** ground, followed by reference to the

3    number of the motion in limine (e.g., "Objection, relevance, violation of defense motion in limine no.

4    4.")

5    IT IS SO ORDERED.

6    **Dated:    August 13, 2009**                          **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28